This version includes the erratas dated 21Apr05 & 13May05 - e

UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-1077

LIZZIE K. MAYFIELD, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      April 14, 2005      )

*John Rosinski*, of Madison, Wisconsin, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Alice M. Szynklewski*, all of Washington, D.C., were on the brief for the appellee.

Before STEINBERG, GREENE, and KASOLD, *Judges*.

STEINBERG, *Judge*:  Lizzie K. Mayfield (the appellant), the surviving spouse of deceased veteran Estey Mayfield, seeks, through counsel, review of a May 23, 2002, decision of the Board of Veterans' Appeals (BVA or Board) that denied her claim for Department of Veterans Affairs (VA) service connection for the cause of her husband's death. Record (R.) at 1-11.  The parties each filed briefs, and on March 23, 2004, the Court, by single-judge order, ordered the May 2002 BVA decision vacated and the matter remanded in order for VA to comply with the regulatory requirement in 38 C.F.R. § 3.159(b)(1) that VA "'request that the claimant provide *any evidence in the claimant's possession* that pertains to the claim.'" *Mayfield v. Principi*, No. 02-1077, 2004 WL 772121 (Vet. App. Mar. 23, 2004) (quoting 38 C.F.R. § 3.159(b)(1) (2003)).

On April 13, 2004, the Secretary filed a motion for reconsideration or, in the alternative, for a panel decision. On June 3, 2004, the Court ordered, pursuant to Rule 35(g) of the Court's Rules of Practice and Procedure (Rules), the appellant to respond to the Secretary's motion, and, after seeking and receiving an extension of time to file such response, she filed her response on July 2, 2004.  On October 28, 2004, a panel of the Court issued an order that, after noting that the single judge had denied the Secretary's motion for reconsideration, granted the motion for a panel decision.  The Court will withdraw its single-judge order and will issue this opinion in its stead.  For the reasons set forth below, the Court will affirm the May 2002 Board decision.

**I. Background**

Veteran Estey Mayfield served honorably on active duty in the U.S. Army from October 1942 to March 1946. R. at 15. In August 1980, he filed a VA compensation and pension application (C&P application) seeking service connection for a "[l]eft[-]leg injury and varicosities of both legs". R. at 115. The veteran was awarded service connection for both conditions, and was ultimately assigned a 50% disability rating, effective from July 1985, for his varicosities and a noncompensable rating for residuals of a laceration of the anterior-upper-tibia area, effective from August 5, 1950. R. at 205. In October 1999, the veteran died; on his death certificate, the cause of death was listed as "[c]ongestive [h]eart [f]ailure due to, or as a consequence of [c]oronary [a]rtery [d]isease [(CAD)]." R. at 207. The autopsy report noted that the veteran had "[s]evere coronary artery disease with varying degree[s] of occlusion up to 90% involving all branches including bypass." R. at 212.

In November 1999, appellant Lizzie K. Mayfield, the veteran's surviving spouse, filed a claim for dependency and indemnity (DIC) benefits; she asserted that the cause of her husband's death was related to service. R. at 227-30. Specifically, she contended that the veteran as a result of his varicosities was unable to undergo proper treatment for his CAD. R. at 224. On December 19, 1999, a VA regional office (RO) denied her DIC claim as not well grounded on the basis that the evidence "fail[ed] to establish any relationship between the veteran's military service . . . and [his] death . . . as a result of congestive heart failure due to coronary disease." R. at 247. Mrs. Mayfield timely filed a Notice of Disagreement (NOD) as to that VARO decision (R. at 258), and in June 2000 the RO issued a Statement of the Case (SOC), which noted that "[n]o medical evidence ha[d] been presented which provides a link between the veteran's varicose[-]vein condition and his death" (R. at 268). Mrs. Mayfield then filed a Substantive Appeal to the Board (R. at 270-71), and on November 15, 2000, she was afforded a video hearing before the Board (R. at 297-313). In December 2000, the Board, inter alia, remanded the DIC matter for readjudication in light of the enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, § 3, 114 Stat. 2096, 2096-98.

On remand from the Board, the RO sent to Mrs. Mayfield a December 13, 2000, letter asking that she "identify all VA and non-VA health care providers who ha[d] treated the veteran subsequent to service, and particularly any medical treatment rendered to the veteran immediately preceding his death." R. at 323. In response, she signed and submitted three forms authorizing the veteran's private physicians to release the veteran's treatment records to the RO. R. at 376, 386, 391. In authorizing Dr. Cheng Tien, the veteran's treating physician, to release the veteran's records, Mrs. Mayfield stated specifically that she "need[ed] any and all medical evidence which would help establish that the veteran (Estey) could not undergo necessary treatment for [his] heart condition because of the severe varicosities of the lower extremities." R. at 376. She stated more generally in the two other authorization release forms that she needed all records that pertained to the veteran's heart condition and varicose veins. R. at 386, 391. The RO then sent to Mrs. Mayfield on March 15, 2001, a VCAA-notice letter informing her of VA's duty to notify and assist her in obtaining information or evidence under the amendments made by the VCAA. R. at 833-36. The full text of that letter is set forth in the Appendix to this opinion. She responded in a March 29, 2001, letter stating that she "would like a medical opinion on the likel[i]hood that [the veteran's service-connected] condition of varicose veins may have contributed to the cause of his death." R. at 924. The RO also obtained treatment records from Dr. Tien (R. at 680), the University of Wisconsin Hospital and Clinic (R. at 750), and the Monroe Clinic (R at 926). Upon review of the veteran's private and service medical records, a VA physician, in August 2001, stated:

Mr. Mayfield had several cardiac risk factors for [CAD] including long[]standing hypertension and diabetes. . . . He had [a] successful two[-]vessel Coronary artery bypass-[s]urgery in 1990. . . . His left ventricular systolic function and renal function slowly deteriorated and he died of severe congestive heart failure and renal failure. I did not see any notes by cardiac surgeons stating the inability of bypasses due to varicosit[ies] of his leg veins. He needed only two vessels bypass[ed], which was appropriately done.

R. at 1046. In an addendum, the VA physician opined:

This veteran's CAD is ***more likely than not*** related to both his long[]standing smoking and his [hypertension (HPT)]. Both are well documented in the medical literature to be associated with an increased incidence of CAD. It is ***less likely than not*** that the veteran's varicose veins impacted his CAD either positively or negatively.

*Ibid* (emphasis added). In January 2002, the RO issued a Supplemental SOC (SSOC) that denied service connection for the cause of the veteran's death. R. at 1049-57. In the SSOC, the RO concluded that none of the newly submitted or obtained evidence nor any of the previously received evidence "indicated any relationship of the heart problems to service or the service[-]related conditions." R. at 1056.

In the May 23, 2002, BVA decision here on appeal, the Board found that there was "no competent medical evidence linking the veteran's fatal cardiovascular disease . . . to service or his service-connected disabilities." R. at 3. As to the notice and duty-to-assist provisions enacted by the VCAA in 38 U.S.C. §§ 5103(a) and 5103A, the Board determined that "VA has met its duty to notify and assist in the appellant's case" and stated:

The record discloses that the December 1999 [RO] decision provided the appellant with the reasons and bases for the denial of her claim. The June 2000 [SOC] and the January 2002 [SSOC] provided the appellant with the applicable law and regulations pertaining to service connection for the cause of the veteran's death.

R. at 4. The Board did not address or even cite to the VA regulation, 38 C.F.R. § 3.159(b)(1), issued nine months earlier, *see* R. at 1-11. 66 Fed. Reg. 45,620, 45,630-31 (Aug. 29, 2001).

## II. Contentions on Appeal

The appellant filed a brief in which she argues for remand on the grounds (1) that the Secretary "failed to fulfill [his] duty to notify under **38 U.S.C. § 5103(a)**" (emphasis in original) as amended by the VCAA by not notifying her of "the need for medical evidence to substantiate the causative relationship between the veteran's . . . surgery . . . and his death", (2) that the Secretary failed to advise her who was responsible for obtaining what evidence, and (3) that the Board failed to address adequately under 38 U.S.C. § 7104(a) and (d)(1) how the Secretary had complied with those section 5103(a) notice requirements. Appellant's (App.) Brief (Br.) at 4-6. Although she did not raise in her principal brief any argument with respect to the Secretary's compliance with the fourth element of notice, thereby indicating a possible abandonment of that issue, *see Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd*, 104 F.3d 1328 (Fed. Cir. 1997), it was that issue that formed the basis of the single-judge order as to which reconsideration has now been granted. Both parties have addressed this issue in the reconsideration pleadings in this appeal. Thus, the issue will be addressed. Additionally, although the issue of a timing-of-notice error was not

specifically raised during briefing, timing of notice is part of the Secretary's compliance with his duty to notify under section 5103(a), *see Pelegrini v. Principi*, 18 Vet.App. 112, 118-19 (2004), and the appellant did contend that the Secretary has "failed to fulfill [this] duty" (App. Br. at 4). Under the circumstances, the Court will address the timing-of-notice issue as well.

The Secretary argues for affirmance of the May 2002 BVA decision on the grounds that it is supported by a plausible basis in the record (Secretary's (Sec'y) Br. at 7-10) and that VA satisfied its duty to notify in that the "[a]ppellant was provided notice in substantial compliance with . . . [section] 5103(a)" by virtue of the June 2000 SOC, the January 2002 SSOC, and the March 2001 VCAA-notice letter. Br. at 11-14. Additionally, the Secretary contends that the Board provided an adequate statement of reasons or bases for its decision but argues that, should the Court determine that the Board decision contained a reasons-or-bases error, "such error would necessarily be non[]prejudicial given the clear absence of any defect in notification." Br. at 14-15. Finally, the Secretary claims that any "error is harmless unless the appellant shows the ultimate legal question should be decided differently." Br. at 15.

In the Secretary's motion for reconsideration, he makes two principal arguments: (1) That the language contained in the March 2001 VCAA-notice letter "should be deemed to be sufficient to fulfill the [regulatory] requirement [in 38 U.S.C. § 3.159(b)(1) (2002)] that VA must request that the claimant provide any evidence in her possession that pertains to the claim" and "was in substantial compliance with the requirement of the regulation" (Motion (Mot.) at 2-3); and (2) that the appellant has made no showing of prejudicial error (Mot. at 3-6). Specifically, he contends that "it was incumbent upon [the a]ppellant to establish that if VA had provided notice consistent with [§] 3.159(b) as interpreted by this Court, the outcome below would have been different." Mot. at 4. In response, the appellant asserts that the notice provided does not comply with the regulatory requirement and contends that "[n]o further showing of prejudice by the [a]ppellant is required or possible when the Secretary fails to identify in the notice the additional evidence necessary to substantiate a claim." Response (Resp.) at 3-4.

### III. Applicable Law and Regulation

Section 3 of the VCAA amended, inter alia, 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence"). VCAA § 3(a), 114 Stat. at 2096-97. Section 5103(a) provides:

> (a) REQUIRED INFORMATION AND EVIDENCE.–Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

38 U.S.C. § 5103(a). On August 29, 2001, the Secretary issued regulations that implemented, inter alia, amended section 5103 in 38 C.F.R. § 3.159(b). Subject to several exceptions not implicated by the current appeal, the Secretary made those regulations applicable to any claim for benefits, such as that in the instant case, pending before the Department and "not decided by VA" as of November 9, 2000, the date of the VCAA's enactment. 66 Fed. Reg. at 45,629; *see Pelegrini, supra* (holding that regulation, with exceptions not here relevant in 38 C.F.R. § 3.159(b) and (c), which was made

applicable expressly to "any claim for benefits received by VA on or after November 9, 2000, . . . as well as to any claim filed before that date but not decided by VA as of that date", 66 Fed. Reg. at 45,620, applied to all claims pending before VA on November 9, 2000). Specifically, the amended regulation § 3.159(b)(1) provides, and provided at the time of the BVA decision here on appeal, in pertinent part:

> (b) *VA's duty to notify claimants of necessary information or evidence.* (1) When VA receives a complete or substantially complete application for benefits, it will notify the claimant of any information and medical or lay evidence that is necessary to substantiate the claim. VA will inform the claimant which information and evidence, if any, that the claimant is to provide to VA and which information and evidence, if any, that VA will attempt to obtain on behalf of the claimant. VA will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim.

38 C.F.R. § 3.159(b)(1) (2004). Regarding the notice requirement, in *Quartuccio v. Principi* this Court remanded a matter for further adjudication after concluding that neither of the potential VCAA-notice communications in that matter met the requirements set forth in amended section 5103(a) and § 3.159(b)(1) because they failed to "'notify the claimant . . . of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim'" and failed to "'indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary . . . will attempt to obtain on behalf of the claimant.'" *Quartuccio*, 16 Vet.App. 183, 187 (2002) (quoting 38 U.S.C. § 5103(a)). The regulatory requirement that VA "will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim", 38 C.F.R. § 3.159(b)(1), has been termed "a fourth element of the requisite notice". *Pelegrini*, 18 Vet.App. at 121. In *Pelegrini*, the Court held that the notice requirements of section 5103(a) and § 3.159(b)(1) must be satisfied prior to an initial unfavorable decision by an agency of original jurisdiction (AOJ) on a claim. *Id.* at 120; *cf. Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1341 (Fed. Cir. 2003) (invalidating 38 C.F.R. § 19.9(a)(2) (2002) because "it allows the Board to consider additional evidence without having to remand the case to the AOJ for initial consideration [or] without having to obtain the appellant's waiver [of such remand]"). In a case involving the sufficiency of notice to a veteran regarding an impending foreclosure based on a default under a VA-guaranteed home loan, the Court assessed the sufficiency of the notice under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *Buzinski v. Brown*, 6 Vet.App. 360, 365 (1994); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

The Board is required to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 592-93 (1991); *see* 38 U.S.C. § 7104(a), (d)(1); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57. The Board's failure to address adequately in its decision the notice provisions in amended section 5103(a) can constitute a separate ground for remand under 38 U.S.C. § 7104(a) and (d)(1). *Charles v. Principi*, 16 Vet.App. 370, 373-74 (2002).

When reviewing decisions of the Board, the Court "shall take due account of the rule of prejudicial error."

38 U.S.C. § 7261(b)(2); *see Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004). Because the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Conway* declined to "express [an] opinion . . . on what it means . . . to 'take due account' of the rule [of prejudicial error]", *Conway*, *supra*, we will address here how this rule is applied by this Court.

### IV. Analysis

As a general matter, before prejudice becomes relevant, of course, the Court must conclude that there has been an error. In that regard, every appellant must carry the general burden of persuasion regarding contentions of error. *See Berger v. Brown,* 10 Vet.App. 166, 169 (1997) (stating that "the appellant . . . always bears the burden of persuasion on appeals to this Court"); *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that appellant had failed to satisfy burden of demonstrating error in Board decision, and thus affirming); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993) (noting that issues not raised may be considered abandoned); U.S. VET. APP. R. 28(a) (requiring appellant to raise all issues on appeal). Accordingly, an appellant claiming noncomplying notice bears the burden of convincing the Court that a notice error has been committed, by referring to specific deficiencies in the document(s) in the record on appeal (ROA), including any documents that the Secretary and/or the Board may have relied on as having met the section 5103(a)/§ 3.159(b)(1) requirements – that is, the appellant bears the burden of demonstrating specifically in what respects the particular notice documents are noncompliant in terms of the purposes sought to be achieved by the notice requirements, *see Parker v. Brown*, 9 Vet.App. 476, 481 (1996) (referring to "'interest that the statute . . . in question was designed to protect'" (quoting *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996))). However, in light of the fact that the single-judge decision here found a notice error that was prejudicial and because the parties present very divergent interpretations and applications of the rule of prejudicial error, we will address the rule of prejudicial error first.

#### *A. Rule of Prejudicial Error*

The Secretary argues that the appellant has failed to demonstrate prejudice, and that the Board's decision should therefore be affirmed. Mot. at 3-6. The appellant contends that when the Secretary fails to notify a claimant what additional evidence is necessary to substantiate a claim, "[n]o further showing of prejudice by the [a]ppellant is required or possible." App. Resp. at 3.

As stated above, in reviewing decisions of the Board, this Court shall "shall take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2); *see also Conway*, *supra*. Although this Court has often applied section 7261(b) to hold that errors are nonprejudicial, the Court has never defined precisely what constitutes prejudicial error, *see, e.g., Edenfield v. Brown*, 8 Vet.App. 384, 390-91 (1995) (en banc) (discussing nonprejudicial error extensively and citing cases), or what burden each party bears with regard to our taking due account of the prejudicial-error rule. In seeking guidance as to how this Court should apply the rule of prejudicial error, we look to similar directives regarding consideration of prejudicial error, how other courts and our caselaw have analyzed and applied that rule, and how the burdens on the parties are allocated in applying the rule. Recently, the Court in *Pelegrini* stated the following in applying the rule of prejudicial error in the context of noncompliance with the timing-of-notice requirement (that is, that notice must precede the initial unfavorable AOJ decision on a service-connection claim) in section 5103(a)/§ 3.159(b)(1):

> With respect to the notice deficiency . . . , the Court, based upon the record and pleadings, cannot intuit that there is no possible information or evidence that could be obtained to substantiate the appellant's . . . claim. Further, it would require pure speculation for the Court to determine at this time that, once given the notice to which he is entitled, the appellant definitely could not provide or lead VA to obtain the information or evidence necessary to substantiate his service-connection claim.

*Pelegrini,* 18 Vet.App. at 121 (citations omitted); *cf. Daniels v. Brown*, 9 Vet.App. 348, 353 (1996) (holding that Court cannot conclude that error (BVA's notification to appellant that additional evidence would be considered only on motion for good cause) was not prejudicial where "it is possible that the appellant would have sought and obtained additional medical opinions, evidence[,] or treatises" on disputed question of fact). We address today both the meaning of prejudicial error and the parties' burdens with respect thereto and how the Court will inform itself in such a way as to avoid its engaging in the kind of "pure speculation" that the Court in *Pelegrini* eschewed. In examining how we should take due regard of the rule of prejudicial error, we are fully cognizant that this Court acts in the context of an appeal from a VA adjudication system that has a well-established "uniquely pro-claimant" nature, *see, e.g., Elkins v. Gober*, 229 F.3d 1369, 1376 (Fed. Cir. 2000) (noting the "pro-claimant, nonadversarial, ex parte system that supplies veterans benefits").

### 1. *Similar Directives*

Similar to this Court's rule of prejudicial error is the "rule of harmless error" for civil cases in federal district courts, as set forth in Rule 61 of the Federal Rules of Civil Procedure. This rule states in part:

> [N]o error or defect . . . in anything done or omitted by the court or by any of the parties is ground for . . . setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

FED. R. CIV. P. 61. By its language, Rule 61 applies only to the district courts, *see* FED. R. CIV. P. 1 (stating that "[t]hese rules govern the procedure in the United States district courts"). However, the Supreme Court of the United States has observed that the federal harmless-error statute, 28 U.S.C. § 2111, which was enacted after the adoption of Rule 61 and provides that "[o]n the hearing of any appeal or writ of certiorari in any case, the Court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties", applies to federal appellate courts and "incorporates the same principle as that found in Rule 61", *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). When interpreting Rule 61, the Supreme Court has held – albeit in a criminal-law context: "[I]f one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). When describing the purpose behind Rule 61, the Supreme Court has stated:

> We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered citadels of technicality. The harmless-error ***rules adopted by*** this Court and ***Congress*** embody the principle that courts should exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial.

*McDonough*, 464 U.S. at 553 (citations and some quotation marks omitted) (emphasis added). We note at the outset that

our discussion of *Kotteakos* and, later, in part IV.A.3, below, of *O'Neal v. McAninch*, 513 U.S. 432 (1995), is for the purpose of drawing general guidance from the Supreme Court's cases involving the application of the basic federal harmless-error statute, which the Supreme Court in *O'Neal* stated "applied to both civil and criminal cases", *Id.* at 441; *accord Kotteakos*, 328 U.S. at 762. We understand fully that in a criminal case, where "life or . . . liberty" is at stake, *id.* at 763, rather than "only some question of civil liability", *ibid.*, different considerations may be applicable, depending on the nature of the proceeding involved, and, further, that concepts involved in a criminal context are not necessarily applicable in a civil context. *See id.* at 762 (stating that "same criteria" regarding prejudice are not always applicable to "civil and criminal causes"); *cf. United States v. Benitez*, 542 U.S. 74, __ n.7, __ n.9, 124 S. Ct. 2333, 2339 n.7, 2340 n.9 (2004) (discussing differences among various types of proceedings and various standards and burdens regarding prejudice).

Additionally, under the Administrative Procedure Act (APA), 5 U.S.C. § 706 (hereinafter APA § 706), federal courts are required to take "due account . . . of the rule of prejudicial error" when reviewing agency administrative action under the APA. *See Intercargo Ins. Co.,* 83 F.3d at 394 (stating that APA § 706 "requires courts to apply conventional principles of harmless error when reviewing agency action"); *Kolek v. Engen*, 869 F.2d 1281, 1286 (9th Cir. 1989). Section 301 of the Veterans' Judicial Review Act, Pub. L. No. 100-687, § 301(a), 102 Stat. 4105, 4115 (1988) (enacting 38 U.S.C. § 4061(b), renumbered as section 7261(b)(2)),[1] which established this Court to carry out judicial review of BVA decisions, was intended to "incorporate a reference to the 'rule of prejudicial error' as included in the APA (5 U.S.C. [§] 706)." S. REP. NO. 100-418, at 61 (1988) (report by Senate Committee on Veterans' Affairs to accompany S. 11, 100th Cong. (1988)); *see also Tulingan v. Brown*, 9 Vet.App. 484, 488 (1996) (Farley, J., concurring) (noting that "APA served as a model for at least some sections of the [Court's enabling statute]"). Because of this congressional intent, because the language of APA § 706 is virtually the same as the language in section 7261(b)(2), and because APA § 706 governs federal appellate court review of administrative agency action, general principles governing application of APA § 706 review are particularly relevant to our determination of how this Court should "take due account of the rule of prejudicial error", 38 U.S.C. § 7261(b)(2), in reviewing BVA decisions.

In addition to finding guidance in the general principles governing APA § 706 and 28 U.S.C. § 2111, we note also that the direction to us in section 7261(b)(2) to "take due account" of the rule leaves us with considerable latitude as to how to "take due account". In this regard, there are many federal statutes and rules relating to prejudicial error that, unlike section 7261(b)(2), are quite specific in their directions. *See, e.g.,* 31 U.S.C. § 3805(c) (as to district-court review of administrative remedies for false claims and statements, providing that "court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error"); FED. R. EVID. 101 (as to general evidence provisions, providing that "[e]rror may not be predicated upon a ruling . . . unless a substantial right of the party is affected"); *cf.* FED. R. CRIM. P. 52(a) (as to criminal trials, providing that "[a]ny error . . . that does not affect substantial rights must be disregarded"). Accordingly, we turn to the task of determining the substance of the "take due account" phrase in section 7261(b)(2).

---

[1] *See* Department of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. No. 102-83, § 402(b)(1), 105 Stat. 187, 238.

## 2. *Interpretations of Prejudicial Error*

As the Federal Circuit noted in *Intercargo Insurance Co.,* "the Supreme Court explained in *Vermont Yankee Nuclear Power Corp. v. N[atural] R[esources] D[efense] C[ouncil]*, 435 U.S. 519, 558 (1978), [that] administrative action, like court decisions, should be set aside 'only for substantial procedural or substantive reasons.'" *Intercargo Ins. Co.*, 83 F.3d at 394. A substantial procedural or substantive reason is one that affects the "substantial rights" of the parties in terms of "the essential fairness of the [adjudication]", *McDonough,* 464 U.S. at 553-54. There is also considerable APA § 706 caselaw to the effect that "the doctrine of harmless error . . . is to be used only 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached.'" *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 215 (5th Cir. 1979) (quoting *Braniff Airways, Inc. v. Civil Aeronautics Bd.*, 379 F.2d 453, 466 (D.C. Cir. 1967)); *accord Sierra Club v. U.S. Fish and Wildlife Serv.,* 245 F.3d 434, 444-45 (5th Cir. 2001); *McLouth Steel Prod. Corp. v. EPA*, 838 F.2d 1317, 1324-25 (D.C. Cir. 1988); *Buschmann v. Schweiker*, 676 F.2d 352, 358 (9th Cir. 1982); *Evans v. Sec'y of Def.,* 944 F. Supp. 25, 29 (D. D.C. 1996); *see also Pelegrini*, *supra* (quoting *U.S. Steel Corp., supra*).

The Secretary relies on *In re Watts*, 354 F.3d 1362 (Fed. Cir. 2004), and *Cunningham v. Laser Golf Corp.*, 222 F.3d 943 (Fed. Cir. 2000), for the proposition that an error is prejudicial only when "the correction of the error would yield a different result", i.e., that the outcome below would have been different but for the error. Mot. at 3-5. For the reasons set forth below, we do not agree that these cases require an outcome to have been different to find prejudice. However, a demonstration that an outcome would ***not*** have been different even if the error had not been committed ***would*** demonstrate that there was ***no*** prejudice. *See Green (Doris) v. Brown*, 10 Vet.App. 111, 119 (1997) (holding that appellant not prejudiced by Board's "requiring new and material evidence . . . because in no event could she have been awarded . . . [38 U.S.C. §] 1318 DIC" as matter of law); *Eddy v. Brown*, 9 Vet.App. 52, 58-59 (1996); *Mason (Sangernetta) v. Brown*, 8 Vet.App. 44, 57 (1995); *Godwin v. Derwinski*, 1 Vet.App. 419, 427 (1991); *see also Valiao v. Principi*, 17 Vet.App. 229, 232 (2003); *Velez v. West*, 11 Vet.App. 148, 155-57 (1998).

In *Cunningham*, although the Federal Circuit held that the appellant "ha[d] not convinced [the court] that the ultimate legal question . . . ***should*** be decided differently," the court based its holding upon the fact that the totality of the evidence before the court outweighed the error regarding the determination of a single factor. *Cunningham*, 222 F.3d. at 948-49 (emphasis added). Four years later in *Watts*, that court held that "the appellant must not only show the existence of error, but also show that the error was in fact harmful because it ***affected*** the decision below." *Watts*, 354 F.3d. at 1369 (emphasis added). The court further explained that harmful error would exist if there is "reason to believe that the 'procedure used or the substance of the decision reached' by the Board ***might have been different*** upon remand." *Id*. at 1370 (quoting *Mass. Trs. of E. Gas & Fuel Ass'ns v. United States*, 377 U.S. 235, 248 (1964)) (emphasis added). We believe that *Cunningham* and *Watts* are consistent with the concept that an error is prejudicial if it affects the "substantial rights" of the parties in terms of "the essential fairness of the [adjudication]." *McDonough, supra.* This conclusion is buttressed by *Wagner v. United States,* 365 F.3d 1358, 1365 (Fed. Cir. 2004), where the Federal Circuit found that the failure to comply with a regulation requiring the Secretary of the Army to pre-approve an officer's release from active duty constituted prejudicial error even though it could not be shown objectively that the outcome would have been different had the error not occurred.

A review of our caselaw demonstrates that we have applied the prejudicial-error rule in a manner consistent with the above principles defining prejudicial error in suits against the United States. For example, in *Parker* we held, based on the Federal Circuit's opinion in *Intercargo Insurance Co.*:

> "A party is not 'prejudiced' by a technical defect simply because that party will lose its case if the defect is disregarded. Prejudice, as used in this setting, means injury to an interest that the statute, regulation, or rule in question was designed to protect."

*Parker*, *supra* (quoting *Intercargo Ins. Co.,* 83 F.3d at 396). We have also required that a lack of prejudice be "clear" before we would overlook a Board error. *Winters v. West*, 12 Vet.App. 203, 207-08 (1999) (en banc) (holding that failure to reopen disallowed claim would not require remand where "it is ***clear*** that the reopened claim would still be not well grounded as a matter of law") (emphasis added), *vacated and remanded on other grounds sub nom. Winters v. Gober*, *supra*; *see Pelegrini*, *supra* (in context of assessing prejudicial error from lack of notice compliance, referring to need for Court "to determine . . . [that] the appellant definitely could not provide or lead VA to obtain the information or evidence necessary to substantiate his service-connection claim"). Further, as noted above, this Court has held that an error is nonprejudicial where the benefit sought could not possibly have been awarded as a matter of law. *See Green, supra*; *Eddy, supra* (holding Board's reasons-or-bases error nonprejudicial because benefit sought "could not have been granted on any of the theories advanced by the appellant"); *Mason, supra* (holding that appellant not prejudiced by Board's failure to discuss "whether either letter constituted an NOD . . . because this Court holds as a matter of law that neither could constitute a valid NOD"); *Godwin, supra* (concluding that Board's apparent failure to take direct account of certain evidence was nonprejudicial where record contains no evidence supporting increased-rating claim); *see also Valiao, supra* (holding that "[w]here the facts averred by a claimant cannot conceivably result in any disposition of the appeal other than affirmance of the Board decision, . . . [t]he failure to carry out [VCAA-notice] development under those circumstances is nonprejudicial error under section 7261(b)(2)"); *Velez, supra* (holding twice that any Board failure to give certain notice was not prejudicial where lack of nexus medical evidence was determinative of outcome of service-connection claim; and holding that any Board error in considering issue of service incurrence was nonprejudicial where nexus medical evidence was lacking); *cf. Smith (Claudus) v. Gober*, 14 Vet.App. 227, 231-32 (2000) (holding that where there is no legal basis for benefit claimed in case, there is no reason to consider VCAA compliance). Synthesizing the above caselaw and discussion, we hold that, consistent with *Intercargo Insurance Co.* and *Parker*, both *supra*, an error below, whether procedural or substantive, is prejudicial when the error affects a substantial right so as to injure an interest that the statutory or regulatory provision involved was designed to protect such that the error affects "the essential fairness of the [adjudication]". *McDonough, supra*; *see Parker* and *Intercargo Ins. Co.*, both *supra*. In other words, the key to determining whether an error is prejudicial is the effect of the error on the essential fairness of the adjudication. Stated in the negative, an error is not prejudicial when the error did not affect "the essential fairness of the [adjudication]". *McDonough, supra*. Moreover, as noted above, although a demonstration by one party that an error did ***not*** affect the outcome of a case would establish that there was or could be no prejudice, the failure of the other party to demonstrate that the error ***did*** affect the outcome does not necessarily mean that the error was harmless. Hence, to persuade that there was no prejudice, a party must demonstrate the essential fairness of the adjudication.

### 3. Allocation of Burdens

Turning to the question of the role of each party in connection with the Court's taking due account of the prejudicial-error rule, the Secretary contends that the burden of demonstrating prejudice should be placed on the appellant (Mot. at 4-5 (discussing burden of proof)). As noted above, there is no dispute that the appellant bears the burden of demonstrating error below. *See* U.S. VET. APP. R. 28(a), *Hilkert, Berger,* and, *Bucklinger*, all *supra*. However, that does not decide the question of allocating burdens relating to prejudice. As discussed below, we conclude that the weight of authority supports the Secretary's position that the appellant must carry some burden with respect to the prejudicial nature of the error.

Congress, in section 7261(b)(2), provided this Court with considerable discretion in determining what burdens should be carried by the parties regarding our taking due account of the prejudicial-error rule. *Cf.* 5 U.S.C. § 7701(c) (provision governing appeals to Federal Circuit from Merit Systems Protection Board (MSPB) in which Congress explicitly placed burden on "the employee or applicant for employment [to] show[] harmful error", 5 U.S.C. § 7701(c)(2)(A)). In his motion for reconsideration, the Secretary relies on the Supreme Court's statement in *Palmer v. Hoffman* that, in a civil case, "'[h]e who seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted'"; the Secretary asserts that the burden of demonstrating that a VCAA-notice error was prejudicial should be on the appellant, as "the party challenging agency action" Mot. at 3 (quoting *Palmer*, 318 U.S. 109, 116 (1943)). In *Kotteakos*, however, the Supreme Court recognized – albeit in a criminal case – that although the "'party seeking a new trial [has] the burden of showing that any technical errors that he may complain of have affected his substantial rights' . . . [that] burden does not extend to all errors", and that "[i]f the error is of such a character that ***its natural effect is to prejudice a litigant's substantial rights***, [then] the burden of sustaining a verdict will, notwithstanding this legislation[,][2] rest upon the one who claims under [the verdict].'" *Kotteakos*, 328 U.S. at 760 (emphasis added) (quoting H.R. REP. No. 65-913, at 1 (1919)); *see also id*. at 765-66 (stressing importance of determining whether error had "natural effect" of producing prejudice).

More than 50 years after *Palmer* was decided, the Supreme Court in *O'Neal*, regarding a habeas proceeding, characterized the *Palmer* language relied upon by the Secretary as "[']pre-*Kotteakos* language['] . . . [that] referred to what . . . *Palmer* described as 'mere "technical errors."'" *O'Neal*, 513 U.S. at 439 (quoting *Kotteakos, supra*). The Supreme Court in *O'Neal* further concluded that, in cases in which there is "grave doubt" as to the harmlessness of an error, the burden of demonstrating prejudice in a civil context should be on the government because 28 U.S.C. § 391, the predecessor to 28 U.S.C. § 2111, the federal harmless-error statute, made no distinction between civil and criminal cases. *O'Neal*, 513 U.S. at 440-41. Thus, although not expressly overruling *Palmer*, *supra*, *O'Neal* makes clear that

---

[2]

The Act of February 26, 1919 (1919 Act), 40 Stat. 1181, amended 269 of the Judicial Code. It provided in part: "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." 28 U.S.C. § 391. In 1949, this provision was reenacted in its current form as 28 U.S.C. § 2111. *See* Pub. L. No. 81-72, § 110, 63 Stat. 89, 105 (1949).

placing the burden of demonstrating prejudice on the appellant is not always the rule in a civil context. *See id.* at 440-42; *see also Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1239-41 (10th Cir. 1999) (declining to decide whether *O'Neal* reverses court's use of burdens of proof when conducting harmless error analysis in civil cases); *Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1374-75 (10th Cir. 1996) (Lucero, J., concurring) (noting that "burden-free" harmless-error approach seems to have been applied in court's civil cases after *O'Neal*). *Compare Obrey v. Johnson*, 400 F.3d 691, __ (9th Cir. 2005) (holding in civil case that court "presum[es] prejudice, rather than harmlessness" (citing *O'Neal, supra*) and placing "'burden on . . .beneficiary of the error . . . to prove that there was no injury'" (quoting *Chapman v. Cal.*, 386 U.S. 18, 24 (1967))), *and Haddad v. Lockhead Cal. Corp.*, 720 F.2d 1454, 1459 (9th Cir. 1983) (stating that harmless-error standard should reflect burden of proof and holding that to reverse "error in a civil trial need only be more probably than not harmless"), *with Kisor v. Johns-Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir. 1986) (purporting to restate standard from *Haddad, supra*, as that "[t]o reverse, we must say that more probably than not, the error tainted the verdict [in a civil trial]"). Indeed, in *O'Neal*, the Supreme Court suggested that, in determining whether a trial error was prejudicial, a reviewing judge should not "try to put the . . . question in terms of proof burdens (*e.g.*, 'Do I believe the party has borne its burden of showing . . . ["that the error substantially influenced the jury's decision"]?')." 513 U.S. at 436-37.

Given the relevance of APA § 706 to our analysis, we find it instructive that appellate courts conducting review under that section generally place a burden of persuasion regarding prejudice on the party claiming that an error below was prejudicial. *See Intercargo Ins. Co.*, *supra*; *see also St. Anthony Hosp. v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 698-99 (10th Cir. 2002); *Air Can. v. Dep't of Transp.*, 148 F.3d 1142, 1156 (D.C. Cir. 1998). *But see U.S. Steel*, *supra* (Fifth Circuit opinion holding that absence of prejudice must be clear for harmless error to apply, when there is outright failure to comply with notice-and-comment requirements of APA); *McLouth Steel Prod. Corp.*, *supra* (D.C. Circuit opinion stating that burden of demonstrating prejudice not generally placed on challenger when agency "completely" fails to comply with APA notice-and-comment requirements). Moreover, the Federal Circuit has stated expressly at times in appeals of administrative agency decisions that the burden of demonstrating that error below was prejudicial is placed on the appellant. *See Watts* and *Cunningham,* both *supra* (requiring appellant to show error and prejudice); *see also Intercargo Ins. Co., supra*. *But cf. Diaz v. Dep't of Air Force*, 63 F.3d 1107, 1109 (Fed. Cir. 1995) (quoting *Handy v. United States Postal Serv.*, 754 F.2d 335, 338 (Fed. Cir. 1985) to effect that, in MSPB case where the review statute ***expressly*** so provided, "[h]armful error must be shown" by appellant to overturn MSPB decision).

Although the Federal Circuit held in *Wagner, supra*, that an appellant does not have a burden with respect to showing prejudice when a substantial procedural right has been denied and it is impossible to demonstrate prejudice objectively, that analysis is not applicable to VCAA-notice cases because when notice is not provided or is inadequate the Court can assess prejudice based on the parties' submissions and the applicable law. When notice is defective, incomplete, or untimely, the party claiming prejudice confronts no barrier similar to that in *Wagner* in coming forward with a showing of what action was or was not taken because of the lack of notice, or a particular defect in the notice, and, once the Secretary responds, a determination can then be made by the Court as to whether or not the essential fairness of the adjudication was affected. *See Yabut v. Brown*, 6 Vet.App. 79, 84-85 (1994) (vacating Board decision based on

holding that Board failure to notify of intention to rely on medical treatise was not harmless "where appellant has presented a plausible argument that he had been prejudiced by the Board's error"). In that manner, the Court will avoid having to engage in the "pure speculation" that we eschewed in *Pelegrini*, 18 Vet.App. at 121.

In our own cases, we have often required that the appellant present a "plausible argument" as to how an asserted BVA error was prejudicial to the appellant. *Yabut, supra*; *see Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (holding that VA's loss of SOC was not prejudicial where "appellant has not alleged with specificity any prejudice that resulted from [that] loss"); *Parker*, 9 Vet.App. at 480-81 (holding that VA's use of specified VA form for recording of results of VA field review of foreclosure appraiser's report in home-loan-guaranty case was not prejudicial where "appellant has not alleged that any prejudice resulted from this error"); *Junstrom v. Brown*, 6 Vet.App. 264, 268 (1994) (holding that Board failure to provide notice and opportunity to respond to proposed Board reliance on medical treatises was not prejudicial where "appellant did not argue that any [such] error by the BVA was prejudicial to his interests"). We recognize, however, that, as the Supreme Court held, where an error's "'natural effect is to prejudice a litigant's substantial rights, [then] the burden . . . rest[s] upon the one who claims under [the challenged decision]'", *Kotteakos, supra* (quoting H.R. REP. No. 65-913, at 1), although an appellant's asserting and identifying such prejudice will be beneficial to the chances that prejudice will be found, *see, e.g., Bingham v. Principi*, 18 Vet.App. 470, 476 (2004) (noting that appellant in his pleadings failed to aver or demonstrate how he could be successful in matter pending before Court); *Dorward v. West*, 13 Vet.App. 295, 296 (2000) (per curiam order) (noting Court's aversion to addressing unsupported assertions on appeal).

The foregoing analysis leads us to conclude that once an appellant has demonstrated an error below he or she generally bears a responsibility to initiate consideration of the issue of prejudice, that is, the appellant carries the burden of going forward with a plausible showing of how the essential fairness of the adjudication was affected by that error. The burden of going forward generally entails making a "prima facie" case, *Hjelvik v. Babbitt*, 198 F.3d 1072, 1074-75 (9th Cir. 1999); 2 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE §10.7, at 165 (3d ed. 1994), and is different from the burden of persuasion, which creates the risk of nonpersuasion, *see Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003); DAVIS & PIERCE, *supra*; *see also Wagner*, 365 F.3d at 1362 (recognizing that Court of Claims had two-step process in reviewing failures to promote service personnel: "First, the officer must show the existence of legal error. [*Engels v. United States*, 678 F.2d 173, 175 (Ct. Cl. 1982)]. Second, the officer must demonstrate a prima facie showing of a causal nexus between the error and the result"); *Porter v. United States*, 163 F.3d 1304, 1315-19 (Fed. Cir. 1998) (discussing in detail Claims Court caselaw regarding armed services selection boards and summarizing *Engels, supra*, as stating that "the burden on the officer is to make a prima facie showing of nexus between the alleged error in his record and the passover decision" and that "final burden of persuasion 'falls to the [g]overnment to show harmlessness – that, despite the plaintiff's prima facie case, there was no substantial nexus or connection'" (quoting *Engels, supra*)). We further note that placing on the appellant this burden of going forward is also consistent with Rule 28(a) of the Court's Rules, which requires a represented appellant to provide a statement of the issues and the facts and contentions relevant to those issues and to provide citations to the parts of the record relied on by the appellant in support of those contentions. *See* U.S. VET. APP. R. 28(a)(3), (4), (5). *But see* U.S.

VET. APP. R. 28(i) (permitting self-represented appellant to submit informal brief on Court-provided form that does not include satisfaction of specific requirements in Rule 28(a)(3), (4), (5)).  Hence, we agree with the Secretary that our application of the rule of prejudicial error should not permit "automatic" remands that would make the Court an ""impregnable citadel[] of technicality"", Br. at 15 (citing *U.S. v. Hasting*, 461 U.S. 499, 508-09 (1983) (quoting R. TRAYNOR, THE RIDDLE OF HARMLESS ERROR 14 (1970)) (citation omitted)); *see also McDonough, supra*.

If an appellant has met the burden of going forward, by asserting with specificity how an error was prejudicial, it becomes the Secretary's burden to demonstrate that the error was clearly nonprejudicial to the appellant – that is, that the error is not one that affected "the essential fairness of the [adjudication]", *McDonough, supra*.  Finally, we note that when assessing any Board error for prejudice, it is important to understand the purpose behind the requirement as to which the Board erred, because there can be no prejudice if that purpose has been satisfied.  *See Parker*, 9 Vet.App. at 481 (stating that "'[p]rejudice . . . means injury to an interest that the statute, regulation, or rule in question was designed to protect'" (quoting *Intercargo Insurance Co.*, *supra*)); *Seaboard Sur. Co. v. Town of Greenfield*, 370 F.3d 215, 223 (1st Cir. 2004) (holding that appellant was in material breach of contract because none of its notice letters "'conveyed with reasonable certainty the information reasonably needed' to serve the purpose of . . . [the] notice requirement" (citation omitted)).

### 4. *Prejudice in Notice-Error Context*

In assessing the interest that the section 5103(a) notice requirements were designed to protect, *see Parker* and *Seaboard Sur. Co.*, both *supra*, we note that in enacting the VCAA "[t]he intent of Congress . . . was to expand the duties of the Secretary." *Quartuccio*, 16 Vet.App. at 186-87.  Nothing in the VCAA or otherwise in title 38 of the U.S. Code, in the VCAA's legislative history, or in VA's August 2001 regulations or their regulatory history, suggests that the VCAA and its implementing regulations were not intended to bestow upon an appellant a substantial right by way of amended section 5103(a) notice.  It is undisputed that section 5103(a) was enacted in order that VA would "early in the claim process" let VA claimants know "what was necessary to substantiate their claims", *Pelegrini,*18 Vet.App. at 120 (quoting VA Gen. Coun. Prec. 8-03 para. 2 (Dec. 22, 2003)), "so that the claimant[s] and/or VA can produce" the "information needed to substantiate their claims" that is "missing", *id*. at 122.  In this manner, section 5103(a) assumes a fundamental role in furthering an interest that goes to the very essence of the nonadversarial, pro-claimant nature of the VA adjudication system, *see, e.g., Elkins, supra* – that is, VA's duty to assist claimants in the development of their claims – by affording a claimant a meaningful opportunity to participate effectively in the processing of his or her claim.  *See* 38 U.S.C. § 5103A; *Holliday v. Principi*, 14 Vet.App. 280, 285 (2001) (stating that "the Court must avoid cutting off an appellant's rights under the VCAA by prematurely injecting itself into the VA adjudication process" because to do so "where no section 5103(a) notice had been provided by VA would violate principles of fair process", given VA's "'uniquely pro-claimant'" benefits system (quoting, in part, *Nolen v. Gober,* 222 F.3d 1356, 1361 (Fed. Cir. 2000), and *Winters v. Gober*, *supra*)); *Daniels, supra*.

Taking into account the foregoing conclusions regarding prejudicial error and the applicable burdens, we conclude that in the section 5103(a) notice context an appellant generally must identify, with considerable specificity,

how the notice was defective and what evidence the appellant would have provided or requested the Secretary to obtain (e.g., a nexus medical opinion) had the Secretary fulfilled his notice obligations; further, an appellant must also assert, again with considerable specificity, how the lack of that notice and evidence affected the essential fairness of the adjudication. *See Marciniak* and *Parker*, both *supra*; *Duran v. Brown*, 7 Vet.App. 216, 222 (1994) (holding that Board's failure to reopen disallowed claim was prejudicial error where Court found that new evidence clearly was material and that, even though Board "in fact" reopened and adjudicated claim on merits, if Board had reopened claim it would have been required to fulfill Secretary's "'statutory duty to assist'" under which Secretary "could well have identified and secured additional supporting medical records . . . , conducted a mental examination of the appellant . . . , and obtained military records"); *Junstrom* and *Yabut,* both *supra*. When the appellant has met the burden of going forward with such a plausible showing of prejudice, then the Secretary must demonstrate a lack of prejudice by persuading the Court that the purpose of the notice was not frustrated – e.g., by demonstrating (1) that any defect in notice was cured by actual knowledge on the part of the appellant that certain evidence (i.e., the missing information or evidence needed to substantiate the claim) was required and that she should have provided it, *see Velez* and *Buzinski,* both *supra,* or (2) that a reasonable person could be expected to understand from the notice provided what was needed, *see Seaboard*, *supra*, or (3) that a benefit could not possibly have been awarded as a matter of law, *see Green, Eddy, Mason*, and *Godwin*, all *supra*; *see also Valiao, supra*; *Velez*, 11 Vet.App. at 155-57 (holding three errors nonprejudicial). Of course, as noted above, if the asserted error is found by the Court to exist and to be of the type that has the "natural effect" of producing prejudice, an appellant need not have pled prejudice and it is the Secretary's burden to demonstrate lack of prejudice in terms of the fairness of the adjudication, *Kotteakos, supra*.

### B. Appellant's Carrying Her Burden of Asserting Prejudice

Applying the foregoing analysis and precepts to Mrs. Mayfield's case, we note first that the appellant "submits that the RO failed to fulfill its duty to notify under **38 U.S.C. § 5103(a)**." App. Br. at 4 (emphasis in original). Specifically, she asserts that the notice in this case was defective on three accounts: (1) The notice failed to identify "the need for medical evidence to substantiate the causative relationship between the veteran's . . . surgery . . . and his death" (App. Br. at 5); (2) the notice failed to advise her who would provide what information (App. Br. at 4); and (3) the notice failed to request that she submit "*any evidence in the claimant's possession* that pertains to the claim" (App. Resp. at 2). She contends that "[n]o further showing of prejudice by the [a]ppellant is required . . . when the Secretary fails to identify in the notice the additional evidence necessary to substantiate a claim." *Id*. at 3.

### 1. First Notice Element

As to the first notice element – regarding the information and evidence necessary to substantiate the claim – the appellant asserts specifically that the notice failed to advise her of the need to substantiate a nexus between her husband's surgery and his death. The natural effect of such error, if found by the Court, would constitute a failure to provide a key element of what it takes to substantiate her claim, thereby precluding her from participating effectively in the processing of her claim, which would substantially defeat the very purpose of section 5103(a) notice. *See Pelegrini*, 18 Vet.App. at 122 (explaining that "the very purpose of requiring that a claimant whose claim is missing necessary

evidence be notified of the information and evidence needed to substantiate the claim is so that the claimant and/or VA can produce that missing evidence"); *see also Holliday* and *Daniels,* both *supra*. Accordingly, even though the appellant has failed to assert specifically how she was prejudiced by this asserted notice error, the specificity and substantive nature of her asserted notice error is, as discussed above, such as to make it one that has the natural effect of producing prejudice and thus to shift to the Secretary the burden of demonstrating that there was clearly no prejudice to the appellant based on any failure to give notice as to this element. *See Daniels*, *supra* (holding that notification error was prejudicial because without that error appellant might have presented additional medical evidence).

### 2. Second and Third Notice Elements

Concerning the appellant's contention that the Secretary failed to inform the appellant about who should provide what information and evidence, the Court notes that this assertion of error, by itself, does not have the natural effect of producing prejudice because this asserted error did not preclude the appellant from effectively participating in the processing of her claim, *see Pelegrini, supra*. That is because prejudice can arise from such an asserted error only if she failed to submit evidence because she was not advised to do so, or if the Secretary failed to seek to obtain evidence that he should have obtained. The appellant, who is represented here, has failed to provide any specifics with regard to how she was prejudiced in this regard.

### 3. Fourth Notice Element

As noted above, the fourth notice element requires the Secretary to "request that the claimant provide any evidence in the claimant's possession that pertains to the claim", 38 C.F.R. § 3.159(b)(1). With regard to the appellant's assertion that notice was defective because it requested that she provide any additional evidence ***supportive*** of her claim rather than evidence that ***pertains*** to her claim, such error does not have the natural effect of producing prejudice. Prejudice would exist only if the claimant had evidence in her possession, not previously submitted, that is, of the type that should be considered by the Secretary in assessing her claim – such as a nexus medical opinion. *Cf. Pelegrini, supra* (holding that Board must ensure that appellant is provided content-complying notice unless Board is able to conclude on facts of record that no prejudice resulted from lack of notice (citing *Conway*, 353 F.3d at 1375)). The appellant provided numerous responses to the Secretary's requests for evidence, and there is no indication that she had pertinent evidence in her possession – including neutral evidence that might lead to supportive evidence – that she did not provide in response to the notice she received. Although it is possible that she may have possessed such evidence, that is a matter within her knowledge and certainly outside the Secretary's. Under such circumstances, her failure to make a plausible showing of how the essential fairness of the adjudication was affected, *see McDonough, supra,* is a failure to carry her burden regarding prejudice.

### 4. Timing of Notice

Finally, with regard to the timing of notice, the Court notes that this, too, is the type of error that does not have the natural effect of producing prejudice and that, therefore, prejudice must be pled as to it. The appellant failed to do so here. In this case, as noted above, the Court will address this issue and will hold below that there was no prejudice from an untimely provision of notice here.

### C. Compliance with Notice Requirements

In the preceding part, the Court concluded that the error asserted by the appellant that she never received sufficient first-element notice – of what was necessary to substantiate her claim – was the type that, if found by the Court, would have had the natural effect of denying her a meaningful opportunity to participate effectively in the processing of her claim, and we will thus discuss below the merits of her contention of error. In addition, because we have not previously set forth definitively a pleading requirement regarding prejudice in a notice context, we will also examine whether the second, third, and forth notice elements, as well as the timing of the notice provided to her, satisfied the Secretary's statutory and regulatory notice obligations and, if not, whether any error was prejudicial to her.

As noted above, the Secretary is required by section 5103(a) to inform the claimant of information and evidence not of record, (1) that is necessary to substantiate the claim, (2) that VA will seek to obtain, if any, and (3) that the claimant is expected to provide, if any. 38 U.S.C. § 5103(a); *Quartuccio*, 16 Vet.App. at 187. Additionally, § 3.159(b)(1) provides that the Secretary "will also request that the claimant provide any evidence in the claimant's possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1); *see Pelegrini*, 18 Vet.App. at 121. In the instant case, the Board concluded that the Secretary had provided the appellant with the statutorily required notice in three documents: The December 1999 RO decision, the June 2000 SOC, and the January 2002 SSOC. R. at 4-5. The appellant contends that neither these documents nor the March 2001 VCAA-notice letter identified "the specific information or evidence, not previously provided, that is necessary to substantiate the claim [, particularly] the need for medical evidence to substantiate the causative relationship between the veteran's . . . surgery . . . and his death". App. Br. at 5. She also argues that the Secretary is incorrect in contending that he substantially complied with the regulatory requirement that he request that she "provide any evidence in the claimant's possession that pertains to the claim." Resp. at 2 (quoting 38 C.F.R. § 3.159(b)(1)). For the following reasons, we hold, in part IV.C.1, below, that the Board did not err in finding that the Secretary met his statutory duty to notify in this case as to the content of the notice provided and further hold, in part IV.C.2, and 3, below, that the regulatory duty was substantially satisfied on the facts of this case and that a timing-of-notice error was nonprejudicial because the error was cured by subsequent VA actions.

### 1. Compliance with Statutory Requirements

In addition to the three documents specifically addressed by the Board decision, the record before the Board also contains the March 2001 VCAA-notice letter sent to Mrs. Mayfield. That letter contains three pertinent sections, with headings as follows: (1) "What Must The Evidence Show To Establish Entitlement"; (2) "What Has Been Done To Help With Your Claim"; and (3) "What Information Or Evidence Do We Still Need From You". R. at 834-35.

***a. First Notice Element:*** As to the first section 5103(a) notice requirement, that VA inform the claimant of information and evidence not of record that is necessary to substantiate the claim, the March 2001 letter advised Mrs. Mayfield that in order to substantiate her claim the evidence needed to show a causal relationship between the veteran's service-connected condition and his death. In addition, there was a specific reference to the process of getting a VA or private "medical opinion" on the nexus question. R. at 834. Specifically, in the first section of the letter, the RO listed the following three requisites for a finding of service connection for the veteran's death: (1) "The cause of death"; (2)

"[a]n injury, disease[,] or other event in service"; and (3) "[a] relationship between the cause of death and the injury, disease, or other event in service." *Ibid*. Under the third requisite, the RO letter informed Mrs. Mayfield that a causal relationship was usually shown by either a death certificate or by medical evidence – so-called nexus medical evidence – and then stated: "[W]e may also try to get this evidence for you by requesting a medical opinion from a VA doctor, *or you can give us a medical opinion from your own doctor*." *Ibid*. (emphasis added). Although the appellant argues that the VCAA-notice letter did not state expressly what evidence necessary to substantiate her claim was "not previously provided" under 38 U.S.C. § 5103(a) (Resp. at 2), this Court has never held that *over*compliance is necessarily equivalent to *non*compliance – that is, that that degree of specificity is required in order for first-element notice to be compliant. A notice letter consists of various sections that are not to be read in isolation; rather, all sections should be construed in connection with one another so as to determine whether the document, read as a whole, addresses all aspects of the requisite notice. *Cf. Cottle v. Principi*, 14 Vet.App. 329, 334 (2001); *Meeks v. West*, 12 Vet.App. 352, 354 (1999) (stating that "'each part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole'" (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992))), *aff'd,* 216 F.3d 1363 (Fed. Cir. 2000); *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992).

The third section of that notice letter informed Mrs. Mayfield that she should submit any additional evidence to substantiate her claim for service connection for the cause of her husband's death and then stated that this evidence could include treatment records and physician or lay statements. R. at 835. Although this section is describing *existing* evidence tending to show the cause of the veteran's death, rather than evidence *needing to be produced* (i.e., a nexus medical opinion), when the VCAA-notice letter is read as a whole the first sentence of that section (by referring to "evidence that supports your claim for service connection for the cause of your husband's death" (R. at 835)) adequately refers back to the first section of the notice letter (1) where Mrs. Mayfield was told that in order to substantiate her claim the evidence needed to show a causal relationship between the veteran's service-connected condition and his death and (2) where there was a specific reference to the process of getting a VA or private "medical opinion" as to the nexus question (R. at 834).

Furthermore, the notice letter needs to be read in the context of prior, relatively contemporaneous communications to Mrs. Mayfield from the AOJ. *See generally Quartuccio*, 16 Vet.App. at 187 (considering all relevant VA communications when determining whether adequate notice had been provided). Here, the June 2000 SOC that the RO provided to Mrs. Mayfield 10½ months earlier acknowledged that she believed "that the veteran's service[-]connected varicose[-]vein condition contributed to his death as he did not have enough healthy veins available for heart bypass surgery" but noted that no evidence establishing a link between the veteran's varicose veins and the cause of his death had been provided. R. at 268. This notice thus informed Mrs. Mayfield of the necessary information and evidence *not already provided* (i.e., a nexus medical opinion). Moreover, the evidence shows that Mrs. Mayfield was well aware of what evidence had not been submitted previously. She not only requested from the veteran's private physician an opinion linking the veteran's service-connected condition to his CAD (R. at 376), but she also further requested, in response to the VCAA-notice letter sent two weeks before, that VA obtain such a nexus medical opinion on her behalf (R. at 924), evidencing actual knowledge on her part regarding what was needed to substantiate her claim. *See Velez,* 11 Vet.App. at 157 (holding that actual knowledge by the veteran cures defect in notice); *Buzinski, supra*; *cf. Baxter v. Principi*, 17

Vet.App. 407, 410 (2004) (holding that actual receipt of deficiency-free notice of RO decision satisfies notification requirement even though record suggested that notice was sent to claimant's wrong address).

In light of this notice in the June 2000 SOC and taking into account that Mrs. Mayfield already knew what she had provided, and that a reasonable person, on the facts present here, would have known from the AOJ's relatively contemporaneous communications, and on the basis of the knowledge of what the claimant had already provided, what information to substantiate the claim was missing and who was responsible for obtaining it, we hold that the Board did not err in finding that the Secretary fulfilled his statutory obligation as to the first notice element. *See Quartuccio*, *supra*. That is not to say that under other circumstances an appellant could not demonstrate that the notice provided was sufficiently confusing – for example, about what information and evidence had not been previously provided – so as to amount to a notice deficiency regarding this first notice element.

*b. Second and Third Notice Elements:* Concerning the second and third section 5103(a) notice requirements, the March 2001 VCAA-notice letter notified Mrs. Mayfield about who would be responsible for providing or seeking to obtain which information and evidence. Specifically, the notice letter advised her that VA had requested copies of the veteran's VA medical records, as well as copies of his private medical records, but that, ultimately, she was responsible for obtaining and providing any private treatment records. R. at 834. The letter further stated that VA would attempt to obtain a medical opinion, or that she could provide one of her own. Given this information, the Court holds that the Board did not err in finding that the Secretary fulfilled his statutory obligation as to the second and third notice elements. *See Quartuccio*, *supra*.

### 2. Compliance with Regulatory Fourth-Element Notice Requirement

As noted above, 38 C.F.R. § 3.159(b)(1) contains "a fourth element of the requisite notice" that requires the Secretary to "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." *Pelegrini*, 18 Vet.App. at 121. There is no evidence in the record that the Secretary ever specifically requested Mrs. Mayfield to "provide any evidence in [her] possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1). Although the Secretary could most efficiently and fully comply with § 3.159(b)(1) by using the exact language of the regulation in any notice provided to a claimant, there is no requirement that the precise words of the regulation be included in order for notice to be complying. This is particularly true with regard to § 3.159(b)(1), which was promulgated in August 2001 but expressly made retroactive to November 2000. 66 Fed. Reg. at 45,629 (amendments made applicable, inter alia, to "any claim for benefits . . . filed before [November 9, 2000,] but not decided by VA as of that date"); *see Pelegrini*, 18 Vet.App. at 118-19. Certainly, the Secretary was providing notice to claimants between November 2000 and August 2001, and it would be illogical to require strict adherence to the language in the regulation in the countless notices provided to claimants in that nine-month interim, which includes the March 2001 letter sent to Mrs. Mayfield.

The purpose behind promulgating § 3.159 was plainly to implement statutory section 5103(a). *See* 66 Fed. Reg. 17,834 (proposed Apr. 4, 2001). In the explanation accompanying the final rule, the Secretary explained the purpose behind the fourth-element-notice requirement and stated:

> The duty to assist is not "always a one-way street"; the claimant cannot passively

wait for VA's assistance in circumstances where he or she may or should have information that is essential to ***obtaining supporting evidence***.

66 Fed. Reg. at 45,624 (emphasis added). Moreover, the Federal Circuit in *Paralyzed Veterans of America v. Secretary of Veterans Affairs* (*PVA v. Sec'y*), agreed that the fourth-element requirement was "only part of a notice that has already identified the information and evidence necessary to substantiate the claim . . . [and that] . . . this additional provision merely assists the claimant by inviting any additional evidence ***that might help substantiate*** the claim." *PVA v. Sec'y*, 345 F.3d 1334, 1347 (Fed. Cir. 2003) (emphasis added); *see Pelegrini*, 18 Vet.App. at 120 (referring to one purpose of notice as being to "lead VA to obtain the information or evidence necessary to substantiate . . . claim").

This Court has held that notice to a claimant in a loan-guaranty-indebtedness case was "sufficient" despite the claimant's argument that the notice did not use the specific words of the notice requirements. *Buzinski*, 6 Vet.App. at 366; *cf. Zajicek v. West*, 12 Vet.App. 48, 50 (1998) (determining that claimant had demonstrated substantial compliance with regulation directing where to send Notice of Appeal despite use of incorrect address); *Daniels, supra* (holding that remand was warranted when notice misinformed claimant as to right to submit additional evidence for VA consideration). We likewise hold that a complying notice need not necessarily use the exact language of the regulation so long as that notice properly conveys to a claimant the essence of the regulation. *See Cummings v. West*, 136 F.3d 1468, 1472 (Fed. Cir. 1998) (holding that BVA notice of appellate rights was sufficient under 38 U.S.C. § 5104(a) even though notice did not include detailed description or information regarding all aspects of appellate rights); *Buzinski, supra*; *see also Parker, supra* (stating that prejudice means "injury to an interest that the . . . regulation was designed to protect"); *Seaboard Sur. Co.,* 370 F.3d at 223 (stating that purpose of notice must be met); *City of W. Chicago v. U.S. Nuclear Regulatory Comm'n*, 701 F.2d 632, 641 (7th Cir. 1983) (concluding that "three magic words ["on the record" from 5 U.S.C. § 554] need not appear for a court to determine that formal [APA] hearings are required" for licensing hearing under Atomic Energy Act (AEA), but that where Congress [by "clear intention in the legislative history of the AEA"] has not "indicate[d] its intent to trigger the formal on-the-record hearing provisions of the APA", such "formal hearings are not statutorily required"); *cf.* Black's Law Dictionary 1442, 1443 (7th ed. 1999) (defining "substantial-compliance rule", also known as the "substantial-performance doctrine", as "equitable rule that, if a good-faith attempt to perform does not precisely meet the terms of the agreement, the agreement will still be considered complete if the essential purpose of the contract is accomplished").

The March 2001 VA letter to Mrs. Mayfield notified her of the following: (1) The three requisites for a finding of service connection for her husband's death; (2) that a causal relationship was usually shown either by a death certificate or by medical evidence; (3) that VA may try to get this evidence for her by requesting a medical opinion from a VA doctor or that she could give VA a medical opinion from her own doctor; (4) that she should submit ***any additional*** evidence to substantiate her claim, which could include treatment records and physician or lay statements describing the veteran's condition and symptoms; (5) which party would be responsible for providing or seeking to obtain which information and evidence; and, finally, (6) under the heading "What Information Or Evidence Do We Still Need From You", stated "You should submit any ***additional*** evidence that ***supports*** your claim for ***service connection for the cause of your husband's death***." R. at 835 (emphasis added). As we have already concluded, the March 2001 letter must be read as a whole, *see*

*King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (stating that "'[w]ords are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used'") (quoting *NLRB v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941)); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (stating that "a word is known by the company it keeps"). Reading the letter as a whole, including its compliance with the three statutory notice elements, we hold, based on the foregoing analysis and the facts of this case, that the RO's March 2001 notice letter was in substantial compliance with the fourth notice element, as set forth in § 3.159(b)(1), because the letter fulfilled the essential purposes of the regulation, i.e., giving notice of VA's desire to obtain additional information and evidence supporting and substantiating the claim and possibly leading to such information and evidence, *see* 66 Fed. Reg. at 45,624.

### 3. *Timing-of-Notice Requirement*

*a. Compliance:* The Board did not address the requirement that notice must be provided prior to the initial RO adjudication. *See Pelegrini*, 18 Vet.App. at 120 (holding that section 5103(a)/§ 3.159(b)(1) notice requirements must be satisfied prior to initial unfavorable decision by AOJ on service-connection claim). Here, neither any of the three documents relied on by the Board to show notice compliance (the December 1999 RO decision, the June 2000 SOC, and the January 2002 SSOC), nor the March 2001 VCAA-notice letter, preceded the initial RO decision in this case, which was the December 1999 RO decision. Therefore, the notice provided did not comply with the timing-of-notice requirement. *See ibid*. However, as we will hold in part IV.C.3.b, below, this notice error was not prejudicial to the appellant.

*b. Lack of Actual Prejudice from Timing-of-Notice Noncompliance:* Having determined that the timing of the notice provided in this case was noncompliant with the statutory requirement that it precede the initial RO decision, we turn to the evaluation of whether such notice error was prejudicial to the appellant. *See* 38 U.S.C. § 7261(b)(2); *Conway, supra*. The Board remanded the appellant's claim in December 2000 for readjudication in light of the VCAA's enactment and thereafter the RO sent the December 13, 2000, development letter (R. at 322) and the March 2001 VCAA-notice letter (R. at 833-36), and obtained various private treatment records as to which Mrs. Mayfield had provided authorizations for release (R. at 376, 386, 391). After a VA physician provided a nexus medical opinion in August 2001 (R. at 1046), the RO's January 2002 SSOC denied service connection for the cause of the veteran's death (R. at 1049-57). This Court addressed this type of situation directly in *Pelegrini* as follows:

> The statute and the regulation provide for pre-initial-AOJ-adjudication notice, but the Court specifically recognizes that, where, as here, that notice was not mandated at the time of the initial AOJ decision, the AOJ did not err in not providing such notice specifically complying with section 5103(a)/§ 3.159(b)(1) because an initial AOJ adjudication had already occurred. Instead, as explained in part III.C, below, the appellant has the right on remand to VCAA content-complying notice and proper subsequent VA process.

*Pelegrini, supra* (citation omitted). In this case, the Board remand and subsequent RO actions were precisely the "proper subsequent VA process" envisioned in *Pelegrini*, as discussed in part III.C of that opinion, and these actions essentially cured the error in the timing of notice. *Id*. at 122-24. Moreover, as noted above, there could be no prejudice if the

purpose behind the notice has been satisfied, *see, e.g., Parker* and *Seaboard Sur. Co.,* both *supra* – that is, affording a claimant a meaningful opportunity to participate effectively in the processing of her claim by VA, *see Pelegrini* and *Holliday,* both *supra.* Review of the record shows clear evidence that that purpose was indeed satisfied here as a result of Mrs. Mayfield's actions to obtain the evidence that was missing in order to substantiate her claim – that is, medical evidence of a nexus linking her husband's varicose-vein condition to his death. For example, in her letter to Dr. Tien, she specifically requested him to provide to the RO "any and all medical evidence which would help establish that the veteran . . . could not undergo necessary treatment for [his] heart condition because of the severe varicosities of the lower extremities." R. at 376. Finally, in response to the March 2001 VCAA-notice letter, Mrs. Mayfield requested the RO to obtain a medical opinion expressing the likelihood that the veteran's cause of death was linked to his service-connected varicosities. R. at 924. Accordingly, we hold that the timing-of-notice error was sufficiently remedied by the process carried out after the Board's December 2000 remand, s*ee Pelegrini* and *Holliday,* both *supra*, so as to provide Mrs. Mayfield with a meaningful opportunity to participate effectively in the processing of her claim by VA. The timing-of-notice error was thus nonprejudicial in this case, *see* 38 U.S.C. § 7261(b)(2); *Conway, supra*, because the error did not affect the essential fairness of the adjudication. *See McDonough*, *Parker*, and *Intercargo Insurance Co.*, all *supra*.

### D. Board's Reasons or Bases Regarding Notice

The appellant argues that the Board failed to discuss adequately the Secretary's compliance with the statutory notice provisions. Br. at 5-6. The purpose behind the requirement that the Board provide an adequate statement of reasons or bases for its decision is "to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court," *Kay v. Principi*, 16 Vet.App. 529, 532 (2002) (citing *Allday, supra*). Given these two purposes of the reasons-or-bases requirement, we hold, based on the following analysis, that any reasons-or-bases deficiency in this case would be nonprejudicial. *See Parker* and *Seaboard Sur. Co.,* both *supra*.

Although we held in *Charles,* 16 Vet.App. at 374, that the Board's failure to address adequately in its decision the notice provisions in amended section 5103(a) constituted there a separate ground for remand under 38 U.S.C. § 7104(a) and (d)(1), the only notice issue that the Court addressed in *Charles* was the reasons-or-bases error, *see id.* at 373-74. That is not the situation in the instant case, because we have already held , in part IV.C.1, above, that, as the Board also determined, VA complied with the statutory notice requirements. Hence, our review here is not hindered by any reasons-or-bases deficiency in the Board decision, and a remand for a reasons-or-bases error would be of no benefit to Mrs. Mayfield and would therefore be pointless. *See Soyini v. Principi*, 1 Vet.App. 540, 546 (1991) (concluding that where evidence is overwhelmingly against claim, remand for reasons-or-bases deficiency would be superfluous); *see also Eddy, supra* (concluding that Board's reasons-or-bases error was nonprejudicial). Accordingly, notwithstanding the fact that the Board inexplicably made no reference to the March 2001 VCAA-notice letter in its VCAA-compliance discussion, the Court need not address the appellant's reasons-or-bases contention in light of our holding that the notice provided to Mrs. Mayfield fulfilled the Secretary's section 5103(a) notice obligation. That is because where the claimant has received compliant notice, any Board reasons-or-bases deficiency in discussing how section 5103(a)/§ 3.159(b)(1) notice has been satisfied in this case would of necessity be nonprejudicial to the claimant. *See* 38 U.S.C. § 7261(b)(2); *Conway, Eddy*, and *Soyini,* all *supra*. "It would elevate form over substance to remand this appeal to the Board to [discuss] that which

. . . has already [been] done." *Guimond v. Brown*, 6 Vet.App. 69, 72 (1993) (holding that Board error in finding no new and material evidence to reopen disallowed claim does not require remand where Board "in fact" did reopen claim and deny it on merits); *cf. Baxter, supra*.

In sum, remanding this matter because of a reasons-or-bases error would be an act of adherence to hypertechnicality about which the Supreme Court cautioned in *McDonough* and *Kotteakos*, both *supra*, about which the Federal Circuit wrote in *Intercargo Insurance Co., supra*, and about which we wrote in *Parker*, *supra*. Such a remand would "'unnecessarily impos[e] additional burdens on the BVA and . . . VA with no benefit flowing to the veteran'". *Sabonis v. Brown,* 6 Vet.App. 426, 430 (1994) (quoting *Soyini, supra*).

## V.  Conclusion

The Court withdraws its March 23, 2004, order and issues this opinion in its stead.  On the basis of the above analysis, the ROA, and the parties' pleadings, the Court holds that the represented appellant was not required to make a plausible showing of prejudice resulting from any Board error regarding the first notice requirement (because the natural effect of such an error would be prejudicial) but that she failed to present plausible showings that any Board error was prejudicial with respect to the second, third, and fourth notice requirements and with respect to timing of notice and, moreover, that she failed to demonstrate that the Board erred in finding that the Secretary fulfilled his statutory content-of-notice obligations in this case.  Additionally, the Court further holds that the Secretary fulfilled his duty to notify with regard to the statutory notice requirements and substantially fulfilled the regulatory notice requirement.  Finally, the Court holds that the appellant was not prejudiced by the timing-of-notice error.  On consideration of the foregoing, therefore, the Court will affirm the May 23, 2002, Board decision, *see* 38 U.S.C. §§ 7252(a), 7261.

AFFIRMED.

# APPENDIX

March 15, 2001

In Reply Refer To: 328/21 ACT--png
XC 29 618 131
MAYFIELD, Estey

LIZZIE K MAYFIELD 1321
LEITH AVENU
WAUKEGAN IL 60085

Dear Mrs. Mayfield:

As instructed by the Board of Veterans' Appeals in their remand dated December 8, 2000 we are taking additional action regarding your claim for service connection for the cause of the veteran's death.

This letter will tell you about the VA's duty to explain to you what information or evidence we need to grant the benefit you want and the VA's duty to assist you in obtaining evidence for your claim as well as what the evidence must show to establish your claim. Also, this letter will tell you what we have done to help with your claim and what information or evidence we still need from you including when and where you should send it. Finally, this letter will also tell how long it will take us to decide your claim **and** how to contact us, if that is necessary.

**VA's Duty To Notify You About Your Claim**

The Veterans Claims Assistance Act of 2000 (VCAA) requires us to explain to you what information or evidence we need to grant the benefit you want. We will tell you when medical evidence is required. Medical evidence includes such things as doctors' records, medical diagnoses, and medical opinions.

We will tell you what necessary information or evidence you must give us, such as income information, or the names and addresses of doctors who treated you for your medical condition.We will also tell you what necessary information or evidence we will try to get for you.

**VA's Duty To Assist You In Obtaining Evidence For Your Claim**

The law states that we must make reasonable efforts to help you get evidence necessary to support

FILE-S...

MAR 1 5 2001

328-P. GIANATASIO

2

XC 29 618 131
Mayfield, Estey

We will also assist you by providing a medical examination or getting a medical opinion if we decide it's necessary to make a decision on your claim.

**What Must The Evidence Show To Establish Entitlement?**

To establish entitlement for service connected death benefits, the evidence must show three things:

- The cause of death. (This is usually shown by the veteran's death certificate or other evidence showing cause of death. You should give us this evidence.)
- An injury, disease or other event in service. (We will get service medical records and will review them to see if they show the veteran had an injury or disease in service, or suffered an event in service causing injury or disease. We will also get other military service records if they are necessary. If you had previously filed a claim for service connected death benefits, we will review the evidence contained in the deceased veteran's claim file.)
- A relationship between the cause of death and the injury, disease, or event in service. (This is usually shown by the death certificate, or in other medical records or medical opinions. We will request this medical evidence for you if you tell us about it. If appropriate, we may also try to get this evidence for you by requesting a medical opinion from **a** VA doctor, or you can give us a medical opinion from your own doctor.)

**What Has Been Done To Help With Your Claim?**

We have requested copies of your treatment records from the Monroe Clinic, University of Wisconsin Hospital Clinics, St. Clare Hospital, and Dr. Cheng Tien. You previously indicated that you have been treated for this condition by the Monroe Clinic, University of Wisconsin Hospital Clinics, St. Clare Hospital, and Dr. Cheng Tien. We have asked that this evidence be provided within 60 days. Please be aware that ultimately you are responsible for this evidence.

We have asked the VA Medical Center North Chicago to provide us with your husband's applicable treatment records and have received a partial response from them.

We are awaiting your response to this letter before further action is taken on your case. If we receive no response from you we will take our action based on the evidence of record.

**What Information Or Evidence Do We Still Need From You?**

3

XC 29 618 131
Mayfield, Estey

You should submit any **additional** evidence that supports your claim for **service connection for the cause of your husband's death**. This may include treatment records for his claimed condition, statements by physicians or other health care professionals who have treated him, or lay statements by you and/or others describing his symptoms and problems.

We will attempt to obtain evidence for you if you complete in full and sign the enclosed VA Form(s) 21-4142, "Authorization for Release of Information" and return them to this office. Be sure to complete a VA Form 21-4142 for each doctor, clinic, or hospital, and provide a complete mailing address as well as the approximate period of treatment and the condition(s) for which you were treated. You may wish to contact the doctor or facility yourself and request release of the information to us. Doing this may reduce the amount of time it will take to decide your claim.

**When and Where Do You Send The Information Or Evidence?**

Send the information describing additional evidence or the evidence itself to the address at the top of this letter. If you have been asked to submit evidence, the evidence should be submitted as soon as possible, preferably within 60 days from the date of this letter. In any case, the evidence must be received in the Department of Veterans Affairs within one year from the date it was requested, otherwise, if entitlement is established, benefits may not be paid for any period prior to the date the evidence is received.

If your address should change while your claim is pending, be sure to notify the Department of Veterans Affairs immediately by writing to the address at the top of this letter or calling our toll free number. Whenever you contact the VA always furnish your VA claim number and your full name.

**Do You Have Questions Or Need Assistance?**

If the information contained in this letter or any future letter is unclear, or you have not received notification of our final decision on your claim within four months of this letter, PLEASE CALL OUR TOLL FREE NUMBER: 1-800-827-1000. If you are in the local dialing area of a VA regional office, check your local telephone directory for the regional office's telephone number.

If you are hearing impaired and must communicate through a Telecommunication Device for the Deaf (TDD), our number is 1-800-829-4833. One of our benefit counselors will provide the assistance you require.

**How Do You Fax Information To Us?**

4

XC 29 618 131
Mayfield, Estey

You can expedite the processing of your claim for benefits by faxing the information to us. By faxing you are eliminating the time delays associated with mail delivery and mail screening. If you do no have faxing capabilities in your own home a large number of Currency Exchanges offer faxing at a nominal fee. If you wish to FAX the information to us our FAX number is (312) 353-8576. You should send the information with a cover sheet showing the following: Department of Veterans Affairs, Service Center Division, ACT Team, and be sure to give your name and claim number. You should include your name and claim number on each piece of correspondence that you FAX. Your claim number is XC 29-618-131.

Sincerely yours,

**/s/ Kerrie**

**Witty**

Kerrie Witty
Veterans Service Center Manager

Enclosure(s): VA Form 21-4138 VA
　　　　　　　Form 21-4142(2)

cc: Disabled American Veterans