Citation Nr: 1111572 
Decision Date: 03/23/11 Archive Date: 04/05/11

DOCKET NO. 09-12 955 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUE

Entitlement to a compensable evaluation for bilateral hearing loss.


REPRESENTATION

Appellant represented by: California Department of Veterans Affairs


ATTORNEY FOR THE BOARD

L.M. Yasui, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1952 to April 1955.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision of the Tiger Team at the Department of Veterans Affairs (VA) Regional Office (RO) located in Cleveland, Ohio. Thereafter, the Veteran's claims file was returned to his local RO in Oakland, California.


FINDINGS OF FACT

1. Prior to July 29, 2009, the Veteran's bilateral hearing loss was manifested, at worst, by hearing loss corresponding to auditory acuity Level II in the right ear, per Table VI of the VA schedule of ratings, and acuity Level IV in the left ear, per Table VIA of the VA schedule of ratings. 

2. From July 29, 2009, forward, the Veteran's bilateral hearing loss had, at worst, been manifested by hearing loss corresponding to auditory acuity Level III in the right ear, per Table VI of the VA schedule of ratings, and auditory acuity Level IV in the left ear, per Table VIA of the VA schedule of ratings. 


CONCLUSIONS OF LAW

1. The criteria for a compensable rating for bilateral hearing loss prior to July 29, 2009 have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 4.85, 4.86, Diagnostic Code 6100 (2010).

2. The criteria for an evaluation of 10 percent disabling, but no higher, for bilateral hearing loss from July 29, 2009, forward, have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 4.85, 4.86, Diagnostic Code 6100 (2010). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function, will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations concerning VA benefits, whether or not they were raised by the veteran, as well as the entire history of the veteran's disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

In deciding the Veteran's increased evaluation claims, the Board has considered the determinations in Fenderson v. West, 12 Vet. App. 119 (1999) and Hart v. Mansfield, 21 Vet. App. 505, 509 (2007), and whether the veteran is entitled to an increased evaluation for separate periods based on the facts found during the appeal period. In Fenderson, the U.S. Court of Appeals for Veterans Claims (Court) held that evidence to be considered in the appeal of an initial assignment of a rating disability was not limited to that reflecting the then current severity of the disorder. In that decision, the Court also discussed the concept of the "staging" of ratings, finding that, in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Id. at 126. Hart appears to extend Fenderson to all increased evaluation claims.

The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10.

Service connection was established for bilateral hearing loss in a June 2008 rating decision. At that time, a noncompensable disability rating was assigned under 38 C.F.R. § 4.85, Diagnostic Code 6100 (2010).

38 C.F.R. § 4.85, Diagnostic Code 6100 sets out the criteria for evaluating hearing impairment using puretone threshold averages and speech discrimination scores. Numeric designations are assigned based upon mechanical use of tables found in 38 C.F.R. § 4.85; there is no room for subjective interpretation. See Acevedo-Escobar v. West, 12 Vet. App. 9, 10 (1998); Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Hearing loss disability evaluations range from noncompensable to 100 percent based on organic impairment of hearing acuity, as measured by controlled speech discrimination tests in conjunction with the average hearing threshold, and as measured by puretone audiometric tests in the frequencies 1000, 2000, 3000, 4000 cycles per second.

The rating criteria for hearing loss establish 11 auditory acuity levels designated from Level I for essentially normal hearing acuity, through Level XI for profound deafness. The rows in Table VI (38 C.F.R. § 4.85) represent nine categories of the percentage of discrimination based on the controlled speech discrimination test. The columns in Table VI represent nine categories of decibel loss based on the puretone audiometry test.

The numeric designation of impaired hearing (Levels I through XI) is determined for each ear by intersecting the row appropriate for the percentage of discrimination and the column appropriate to the puretone decibel loss.

The percentage disability evaluation is found from Table VII (38 C.F.R. § 4.85) by intersecting the row appropriate for the numeric designation for the ear having the better hearing acuity and the column appropriate to the numeric designation level for the ear having the poorer hearing acuity. For example, if the better ear has a numeric designation Level of "V" and the poorer ear has a numeric designation Level of "VII," the percentage evaluation is 30 percent. 38 C.F.R. § 4.85(b), 4.87.

In addition, under 38 C.F.R. § 4.86(a), when the puretone threshold at each of the four specified frequencies, 1000, 2000, 3000, and 4000 hertz (Hz), is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. Each ear will be evaluated separately.

Under 38 C.F.R. § 4.86(b), when the puretone threshold is 30 decibels or less at 1000 Hz, and 70 decibels or more at 2000 Hz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will be evaluated separately.

The Veteran was afforded VA audiology examinations in March 2008 and July 2009 to assess the etiology and current nature and severity of his bilateral hearing loss. On the audiological evaluation in March 2008, puretone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Avg.
RIGHT
25
55
75
95
62.5
LEFT
25
70
55
60
52.5

Speech audiometry revealed speech recognition ability of 92 percent in the right ear and 88 percent in the left ear. Puretone averages were 62.5 decibels in the right ear and 52.5 decibels in the left ear. The diagnosis was bilateral, normal to profound sensorineural hearing loss. 

Using Table VI in 38 C.F.R. § 4.85, the right ear had a puretone average of 62.5 decibels and a speech recognition score of 92; therefore, the right ear receives a designation of II. The left ear had a puretone average of 52.5 decibels and a speech recognition score of 88; therefore, the left ear receives a designation of II. The point at which II and II intersect on Table VII then reveals the disability level for the Veteran's hearing loss, which does not reach a compensable level. 

However, as mentioned above, the regulations have two provisions for evaluating veterans with certain, exceptional patterns of hearing impairment that cannot always be accurately assessed under 38 C.F.R. § 4.85 because the speech discrimination test may not reflect the severity of communicative functioning that these veterans experience. See 38 C.F.R. § 4.86(a) and (b).

In the instant case, the Veteran's disability does not reflect the exceptional hearing loss pattern contemplated under 38 C.F.R. § 4.86(a). However, the Veteran's left ear was shown to have a puretone threshold of 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz in the March 2008 examination report. Under 38 C.F.R. § 4.86(b), an evaluation may be based on Table VIA rather than Table VI if this were to result in a higher evaluation. Using Table VIA in 38 C.F.R. § 4.85, the Veteran's left ear, which had a puretone average of 52.5, receives a designation of III. This designation is then elevated to the next higher Roman numeral, IV. As previously noted, the right ear received a designation of II under Table VI, as it did not demonstrate an exceptional pattern of hearing loss. The point at which II and IV intersect on Table VII then reveals the disability level for the Veteran's hearing loss at the time of the March 2008 examination, which corresponds with a noncompensable disability evaluation.

Hence, despite the application of 38 C.F.R. § 4.86(b) due to the Veteran's exceptional pattern of hearing impairment of his left ear, a compensable disability rating for his bilateral hearing loss is not warranted.

On the audiology evaluation in July 2009, puretone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
Avg.
RIGHT
25
60
75
95
64
LEFT
20
70
60
65
54

Speech audiometry revealed speech recognition ability of 88 percent in the right ear and 92 percent in the left ear. Puretone averages were 64 decibels in the right ear and 54 decibels in the left ear. The diagnosis was severe to profound sensorineural hearing loss in the right ear and moderately severe sensorineural hearing loss in the left ear.

Using the criteria under 38 C.F.R. § 4.85, the Veteran's hearing loss would not reach a compensable level. Again, however, the Veteran's left ear was shown to have a puretone threshold of 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz in the July 2009 examination report, reflecting an exceptional pattern of hearing impairment. 

Using Table VIA in 38 C.F.R. § 4.85, the Veteran's left ear, which had a puretone average of 54, receives a designation of III. This designation is then elevated to the next higher Roman numeral, IV. As indicated from the above puretone thresholds, the right ear received a designation of III under Table VI, as it did not demonstrate an exceptional pattern of hearing loss. The point at which III and IV intersect on Table VII then reveals the disability level for the Veteran's hearing loss at the time of the July 2009 examination, which corresponds with a 10 percent disability rating.

In light of the foregoing, the Board finds that the criteria for a compensable evaluation prior to July 29, 2009 (the date of the July 2009 VA audiology examination) have not been met. However, the criteria for a 10 percent disability rating have been met as of July 29, 2009. A staged, increased rating of 10 percent, effective July 29, 2009, is therefore warranted for the Veteran's bilateral hearing loss. See Fenderson, supra; Hart, supra. 

As such, the Board concludes that a staged, increased evaluation of 10 percent disabling, but no higher, is warranted for the Veteran's bilateral hearing loss disability from July 29, 2009, forward. The benefit-of-the-doubt rule has been applied in arriving at this decision. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).




Extraschedular

To accord justice in an exceptional case where the scheduler standards are found to be inadequate, the field station is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1) (2006). The criterion for such an award is a finding that the case presents an exceptional or unusual disability picture with related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards. The U.S. Court of Appeals for Veterans Claims (Court) has held that the Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance; however, the Board is not precluded from raising this question, and in fact is obligated to liberally read all documents and oral testimony of record and identify all potential theories of entitlement to a benefit under the law and regulations. Floyd v. Brown, 9 Vet. App. 88 (1996). Further, the Board must address referral under 38 C.F.R. §3.321(b)(1) only where circumstances are presented which the Director of VA's Compensation and Pension Service might consider exceptional or unusual. Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

The Court clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. See Thun v. Peake, 22 Vet. App. 111 (2008). The Court stated that the RO or the Board must first determine whether the schedular rating criteria reasonably describe the veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id.

If the RO or the Board finds that the schedular evaluation does not contemplate the veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

The Board has considered an extraschedular evaluation under the provisions of 38 C.F.R. § 3.321(b)(1) and determined referral for extraschedular consideration is not warranted in this case.

Ratings have been assigned that contemplate the disability and symptomatology of each manifestation of the Veteran's disability resulting from bilateral hearing loss. There are no manifestations of the Veteran's bilateral hearing loss that have not been contemplated by the rating schedule and an adequate evaluation was assigned based on evidence showing the symptomatology and/or disability. Indeed, the Veteran's bilateral hearing loss does not indicate an exceptional disability picture of marked interference with employment or frequent periods of hospitalization. Therefore, no referral for extraschedular consideration is required and no further analysis is in order.

Duties to Notify and Assist

The Board is required to ensure that VA's "duty to notify" and "duty to assist" obligations have been satisfied. See 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 (2008). The notification obligation in this case was accomplished by way of letters from the RO to the Veteran dated in November 2007 and March 2009. See Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006); Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008); Vazquez-Flores v. Shinseki, 580 F.3d 1270 (2009).

The RO also provided assistance to the Veteran as required under 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c), as indicated under the facts and circumstances in this case. The Veteran has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide this appeal, and has not argued that any error or deficiency in the accomplishment of the duty to assist has prejudiced him in the adjudication of his appeal. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006). Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist the Veteran in the development of the claim.

ORDER

A compensable rating for bilateral hearing loss prior to July 29, 2009 is denied.

An evaluation of 10 percent, but no higher, for bilateral hearing loss from July 29, 2009, forward, is granted, subject to the applicable laws and regulations governing the payment of monetary awards.


____________________________________________
JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs