﻿Citation Nr: 19172620
Decision Date: 09/19/19 Archive Date: 09/18/19

DOCKET NO. 18-48 271
DATE: September 19, 2019

ORDER

Entitlement to service connection for major depressive disorder (MDD) and generalized anxiety disorder (GAD) is granted.

Entitlement to service connection for obstructive sleep apnea (OSA) is granted.

Entitlement to service connection for a respiratory disability is denied.

Entitlement to service connection for a gastrointestinal (GI) disability is denied.

Entitlement to service connection for breast cancer is denied.

Entitlement to service connection for diabetes mellitus, type II (DM) is denied.

Entitlement to service connection for a sinus disability is denied.

Entitlement to an effective date prior to February 17, 2017, for the award of a 30 percent rating for limitation of extension of the left knee is denied.

REMANDED

Entitlement to service connection for plantar fasciitis is remanded.

Entitlement to service connection for a left hip disability is remanded.

Entitlement to service connection for a right hip disability is remanded.

Entitlement to service connection for a low back disability is remanded.

Entitlement to service connection for tinnitus is remanded.

Entitlement to a rating in excess of 30 percent for limitation of extension of the left knee is remanded.

Entitlement to a compensable rating for limitation of flexion of the left knee is remanded.

Entitlement to a rating in excess of 10 percent for right ankle sprain is remanded.

Entitlement to a total disability rating based on individual unemployability (TDIU) is remanded.

Entitlement to special monthly compensation (SMC) based on the need for aid and attendance is remanded.

FINDINGS OF FACT

1. The Veteran’s currently diagnosed MDD and GAD are likely the result of his service-connected orthopedic disabilities.

2. The Veteran’s currently diagnosed OSA is likely the result of his service-connected orthopedic and (now service-connected) psychiatric disabilities.

3. The preponderance of the evidence is against finding that a respiratory condition began during active service, or is otherwise related to an in-service injury, event, or disease.

4. The preponderance of the evidence is against finding that a GI condition began during active service, or is otherwise related to an in-service injury, event, or disease.

5. The preponderance of the evidence is against finding that breast cancer began during active service, or is otherwise related to an in-service injury, event, or disease.

6. The preponderance of the evidence is against finding that DM began during active service, or is otherwise related to an in-service injury, event, or disease.

7. The preponderance of the evidence is against finding that a sinus condition began during active service, or is otherwise related to an in-service injury, event, or disease.

8. The Veteran’s claim for an increased rating for limitation of extension of the left knee was received on February 17, 2017; it is not factually ascertainable that an increase in this disability occurred between February 17, 2016 and February 16, 2017.

CONCLUSIONS OF LAW

1. The criteria for secondary service connection for MDD and GAD are met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.310.

2. The criteria for secondary service connection for OSA are met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.310.

3. The criteria for service connection for a respiratory disability are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

4. The criteria for service connection for a GI disability are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

5. The criteria for service connection for breast cancer are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

6. The criteria for service connection for DM are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

7. The criteria for service connection for a sinus disability are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

8. The criteria for an effective date prior to February 17, 2017, for the assignment of a 30 percent rating for limitation of extension of the left knee have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from November 1988 to June 1989 with additional reserve service.

Service Connection

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131. Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (noting that nexus may be demonstrated by a showing of continuity of symptomatology where the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a)).

Service connection may also be established on a secondary basis for a disability which is proximately due to, or the result of, a service-connected disability. 38 C.F.R. § 3.310(a). Secondary service connection may also be established for a disorder which is aggravated by a service-connected disability; compensation may be provided for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. 38 C.F.R. § 3.310(b); Allen v. Brown, 8 Vet. App. 374 (1995).

In order to prevail on the issue of secondary service connection, the record must show: (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998); see also Allen, supra.

1. Psychiatric disorders claimed as MDD and GAD

The Veteran asserts that she is entitled to service connection for MDD and GAD. Upon review of the record, this assertion is supported. 

As an initial matter, a March 2019 Disability Benefits Questionnaire (DBQ) from a private psychologist diagnosed the Veteran with mild recurrent MDD and GAD. Private DBQ, March 2019. Thus, the first element of service connection is met.

With regard to an in-service event, the Veteran’s service treatment records are negative for any psychiatric complaints or treatment. However, the Veteran does not claim that her psychiatric disorders are directly related to service. Rather, she claims that they are related to her service-connected orthopedic disabilities. The record reflects that she is service connected for limitation of extension and flexion of the left knee and a right ankle sprain. 

Thus, the determinative issue is whether the Veteran’s psychiatric disorders are due to or aggravated by her service-connected orthopedic disabilities. 

As noted above, the Veteran submitted a DBQ from a private psychologist in March 2019. The private psychologist noted the Veteran’s service-connected disabilities and the resulting symptoms, and concluded that these symptoms caused the Veteran’s depression and anxiety. She cited medical literature linking medical conditions to the development of psychiatric disorders to support her opinion.

The private opinion is the only medical opinion of record that discusses the etiology of the Veteran’s MDD and GAD. Significantly, there is no medical evidence to contradict the private positive opinion.

Given the current diagnosis of MDD and GAD, the private positive opinion attributing these disorders to the service-connected orthopedic disabilities, and the lack of contradictory evidence, the Board finds that the evidence is, at minimum, in equipoise regarding whether the Veteran’s current psychiatric disorders are related to service-connected disabilities. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.310. The benefit of the doubt will be conferred in the Veteran’s favor, and the service-connection claim for MDD and GAD is granted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

2. OSA

The Veteran asserts that she is entitled to service connection for OSA. Upon review of the record, this assertion is supported. 

As an initial matter, an October 2015 private sleep study found that the Veteran had mild OSA. See Private sleep study, October 2015. Thus, the first element of service connection is met.

With regard to an in-service event, the Veteran’s service treatment records are negative for any sleep complaints. However, the Veteran does not claim that her OSA is directly related to service. Rather, she claims that it is related to her service-connected orthopedic and (now service-connected) psychiatric disabilities. 

Therefore, the determinative issue is whether her currently diagnosed OSA is due to or aggravated by her service-connected orthopedic disabilities and psychiatric disabilities. 

The Veteran submitted a DBQ from a private physician in April 2019. See Private DBQ, April 2019. The private physician noted the Veteran’s diagnosis of OSA. He explained that a study showed that sleep fragmentation leads to higher upper airway collapsibility which can contribute to the pathogenesis of OSA. As the Veteran’s pain from her left knee and right ankle disabilities caused poor sleep, he believed that this contributed to her development of OSA. The private physician also cited a study linking psychiatric disorders and OSA, finding that an arousal-based mechanism initiated by psychological stress promoted the development of OSA. As such, he also linked the Veteran’s now service-connected psychiatric disabilities to her development of OSA. He concluded that it was as likely as not that her left knee and right ankle pain, depression, and anxiety aided in the development of and permanently aggravated her OSA. He did note that she had multiple nonservice-connected risk factors for OSA, including a history of a pulmonary embolism (PE) and chronic obstructive pulmonary disease (COPD), but was unable to determine the extent to which each risk factor contributed to the development of OSA. 

The private opinion is the only medical opinion of record that discusses the etiology of the Veteran’s OSA. Significantly, there is no medical evidence to contradict the private positive opinion.

The Board finds that, given the current diagnosis of OSA, the private positive opinion regarding the service-connected orthopedic and psychiatric disabilities, and the lack of contradictory evidence, the Board finds that the evidence is, at minimum, in equipoise regarding whether the Veteran’s current OSA is related to service-connected disabilities. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.310. The benefit of the doubt will be conferred in the Veteran’s favor and remand is not necessary. The service-connection claim for OSA is granted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, supra.

3. Respiratory disorder

The Veteran asserts that she is entitled to service connection for a respiratory disorder. However, the evidence of record does not support this assertion. 

As an initial matter, a December 2015 private treatment record indicates that the Veteran was diagnosed with a pulmonary embolism (PE) and also complained of shortness of breath of unknown etiology and chest pain. See Private treatment record, December 2015. Thus, the first element of service connection is met.

With regard to an in-service event, the Veteran’s service treatment records are negative for any complaints of respiratory or breathing problems. Her separation examination was normal as to the lungs and chest, and she denied shortness of breath, pain or pressure in the chest, and chronic cough on her separation Report of Medical History. As such, the Board finds there is no evidence to support a finding of an in-service event, disease, or injury relating to a respiratory condition. The second element of service connection is not met.

Even if the Board were to ignore the lack of any in-service complaints, there is no evidence indicating that the Veteran’s current respiratory condition is related to any aspect of her military service. She has not provided any medical evidence linking a respiratory condition to service, nor has she provided any lay or medical evidence of continuous respiratory symptoms since service. 

Although laypersons, such as the Veteran, are sometimes competent to provide opinions on certain medical questions, the specific issue in this case falls outside the realm of common knowledge of a lay person as it involves making a definitive clinical determination of the nature and etiology of the Veteran’s respiratory condition and complaints based on knowledge of pulmonology. See Kahuna v. Shinseki, 24 Vet. App. 428, 435 (2011). While the Veteran can describe that she experiences respiratory symptoms, she is not able to provide competent evidence as to the etiology of her condition. 

The Board notes that the Veteran was not afforded a VA examination in conjunction with her respiratory claim. However, as the evidence does not indicate an in-service event or injury or continuous symptoms, a VA examination is not required for this claim. See Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010). 

Accordingly, the Board finds that the claim of entitlement to service connection for a respiratory disability must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim of entitlement to service connection, that doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Ortiz v. Principi, 274 F.3d 1361, 1365 (Fed. Cir. 2001).

4. GI disorder

The Veteran asserts that she is entitled to service connection for a GI disorder. However, the evidence of record does not support this assertion. For instance, with regard to a present disability, records from the Social Security Administration (SSA) indicate that the Veteran experiences heartburn and indigestion. See SSA records. The first element of service connection is, therefore, met.

With regard to an in-service event, the Veteran’s service treatment records are negative for any complaints of GI or digestive problems. Her separation examination was normal as to the abdomen, viscera, anus, and rectum and she denied frequent indigestion and stomach, liver, or intestinal trouble on her separation Report of Medical History. As such, the Board finds there is no evidence to support a finding of an in-service event, disease, or injury relating to a GI condition. The second element of service connection is not met.

Even if the Board were to ignore the lack of any in-service complaints, there is no evidence indicating that the Veteran’s current GI condition is related to any aspect of her military service. She has not provided any medical evidence linking a GI condition to service, nor has she provided any lay or medical evidence of continuous GI symptoms since service. 

Although laypersons, such as the Veteran, are sometimes competent to provide opinions on certain medical questions, the specific issue in this case falls outside the realm of common knowledge of a lay person as it involves making a definitive clinical determination of the nature and etiology of the Veteran’s GI condition and complaints based on knowledge of gastroenterology. See Kahuna, supra. While the Veteran can describe that she experiences GI symptoms, she is not able to provide competent evidence as to the etiology of her condition. 

The Board notes that the Veteran was not afforded a VA examination in conjunction with her GI claim. However, as the evidence does not indicate an in-service event or injury or continuous symptoms, a VA examination is not required for this claim. See Waters, supra. 

Accordingly, the Board finds that the claim of entitlement to service connection for a GI disability must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim of entitlement to service connection, that doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Ortiz, supra.

5. Breast cancer

The Veteran asserts that she is entitled to service connection for breast cancer. However, the evidence of record does not support this request. For instance, with regard to a present disability, private treatment records indicate that the Veteran has been diagnosed with breast cancer. See Private treatment record, May 2016. The first element of service connection is met.

With regard to an in-service event, the Veteran’s service treatment records are negative for any complaints of cancer or breast problems. Her separation examination was normal as to the chest (including breasts) and she denied any symptoms on her separation Report of Medical History. The Board notes that a July 1996 examination for enlistment to the Army Reserves indicates that she had a supernumerary left nipple. However, this was not reported during active duty, nor is there any indication that it is a complaint related to breast cancer. As such, the Board finds there is no evidence to support a finding of an in-service event, disease, or injury relating to breast cancer. The second element of Shedden/Caluza is not met.

Even if the Board were to ignore the lack of any in-service complaints, there is no evidence indicating that the Veteran’s current breast cancer is related to any aspect of her military service. She has not provided any medical evidence linking breast cancer to service, nor has she provided any lay or medical evidence of continuous breast or cancer symptoms since service. 

Although laypersons, such as the Veteran, are sometimes competent to provide opinions on certain medical questions, the specific issue in this case falls outside the realm of common knowledge of a lay person as it involves making a definitive clinical determination of the nature and etiology of the Veteran’s breast cancer based on knowledge of oncology. See Kahuna, supra. While the Veteran can describe that she has been diagnosed with breast cancer, she is not able to provide competent evidence as to the etiology of her condition. 

The Board notes that the Veteran was not afforded a VA examination in conjunction with her breast cancer claim. However, as the evidence does not indicate an in-service event or injury or continuous symptoms, a VA examination is not required for this claim. See Waters, supra. 

Accordingly, the Board finds that the claim of entitlement to service connection for breast cancer must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim of entitlement to service connection, that doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Ortiz, supra.

6. DM

The Veteran asserts that she is entitled to service connection for DM. However, the evidence of record does not support this assertion. 

As an initial matter, VA treatment records indicate that the Veteran has been diagnosed with DM. See VA treatment record, January 2018. Thus, the first element of service connection is met.

With regard to an in-service event, the Veteran’s service treatment records are negative for any complaints of DM. Her separation examination was normal as to the endocrine system, and urinalysis was negative for sugar. She also denied any sugar or albumin in the urine and recent gain or loss of weight on her separation Report of Medical History. As such, the Board finds there is no evidence to support a finding of an in-service event, disease, or injury relating to DM. The second element of service connection is not met.

Even if the Board were to ignore the lack of any in-service complaints, there is no evidence indicating that the Veteran’s current DM is related to any aspect of her military service. She has not provided any medical evidence linking her DM to service, nor has she provided any lay or medical evidence of continuous DM-related symptoms since service. 

Although laypersons, such as the Veteran, are sometimes competent to provide opinions on certain medical questions, the specific issue in this case falls outside the realm of common knowledge of a lay person as it involves making a definitive clinical determination of the nature and etiology of the Veteran’s DM based on knowledge of endocrinology. See Kahuna, supra. While the Veteran can describe that she has been diagnosed with DM, she is not able to provide competent evidence as to the etiology of her condition. 

The Board notes that the Veteran was not afforded a VA examination in conjunction with her DM claim. However, as the evidence does not indicate an in-service event or injury or continuous symptoms, a VA examination is not required for this claim. See Waters, supra. 

Accordingly, the Board finds that the claim of entitlement to service connection for DM must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim of entitlement to service connection, that doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Ortiz, supra.

7. Sinus disorder

The Veteran asserts that she is entitled to service connection for a sinus disorder. However, the evidence of record does not support this assertion. 

As an initial matter, VA treatment records indicate that the Veteran has been diagnosed with allergic rhinitis. See VA treatment record, January 2018. Although this diagnosis affects the nose, not the sinuses, the Board will accept it as a current diagnosis. The first element of service connection is met.

With regard to an in-service event, the Veteran’s service treatment records are negative for any complaints of rhinitis or sinus-related problems. Her separation examination was normal as to the nose and sinuses and she denied ear, nose, or throat trouble, chronic or frequent colds, sinusitis, and hay fever on her separation Report of Medical History. As such, the Board finds there is no evidence to support a finding of an in-service event, disease, or injury relating to the nose or sinuses. The second element of service connection is not met.

Even if the Board were to ignore the lack of any in-service complaints, there is no evidence indicating that the Veteran’s current allergic rhinitis or any sinus condition is related to any aspect of her military service. She has not provided any medical evidence linking her condition to service, nor has she provided any lay or medical evidence of continuous nose or sinus-related symptoms since service. 

Although laypersons, such as the Veteran, are sometimes competent to provide opinions on certain medical questions, the specific issue in this case falls outside the realm of common knowledge of a lay person as it involves making a definitive clinical determination of the nature and etiology of the Veteran’s allergic rhinitis or any sinus-related condition based on knowledge of otolaryngology. See Kahuna, supra. While the Veteran can describe that she has sinus-related symptoms, she is not able to provide competent evidence as to the etiology of her condition. 

The Board notes that the Veteran was not afforded a VA examination in conjunction with her sinus condition claim. However, as the evidence does not indicate an in-service event or injury or continuous symptoms, a VA examination is not required for this claim. See Waters, supra. 

Accordingly, the Board finds that the claim of entitlement to service connection for a sinus condition must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim of entitlement to service connection, that doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Ortiz, supra.

Effective Date

Except as otherwise provided, the effective date for the assignment of an increased evaluation shall be the date of receipt of claim or date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. Also, the effective date of an award of increased compensation shall be the earliest date as of which it is factually ascertainable that an increase in disability had occurred, if an application is received within one year from such date. 38 U.S.C. § 5110(b)(2). However, if the increase became ascertainable more than one year prior to the date of receipt of the claim, then the proper effective date would be the date of the claim. In a case where the increase became ascertainable after the filing of the claim, then the effective date would be the date of increase. See generally Harper v. Brown, 19 Vet. App. 125 (1997).

A specific claim in the form prescribed by the Secretary must be filed in order for benefits to be paid to any individual under the laws administered by VA. 38 U.S.C. § 5101(a); 38 C.F.R. § 3.151(a). The term “claim” or “application” means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p) (2018). 

Effective March 24, 2015, VA amended its regulations to require that all claims governed by VA’s adjudication regulations be filed on a standard form. Prior to March 24, 2015, VA recognized formal and informal claims. The amendments also, inter alia, eliminate the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims to reopen. See 79 Fed. Reg. 57,660 (Sept. 25, 2014), codified as amended at 38 C.F.R. §§ 3.151, 3.155 (2016). The amended regulations, however, apply only to claims filed on or after March 24, 2015. As this claim was filed after March 24, 2015, the current regulations apply, and an informal claim may not be considered.

The Veteran is seeking entitlement to an effective date prior to February 17, 2017, for the award of an increased rating of 30 percent for limitation of extension of the left knee. 

Initially, the Board finds it is relevant to discuss the history of the Veteran’s left knee claim. The Veteran was initially granted service connection for limitation of extension of the left knee with a 10 percent rating effective July 8, 2015, in an August 2015 rating decision. The Veteran did not appeal the effective date of this separate evaluation and it became final. 

Here, the current effective date appeal stems from an August 2017 rating decision that increased the rating for limitation of extension of the left knee to 30 percent effective February 17, 2017. The Board notes that the appropriateness of this 30 percent rating has been remanded for a new VA examination below. However, as the effective date claim is based on the evidence of record at the time of the August 2017 rating decision, a new VA examination is not relevant. The Board’s adjudication of the earlier effective date claim need not be delayed.

A review of the record reveals that the RO assigned an effective date of February 17, 2017, for the assignment of an increased rating of 30 percent for the Veteran’s limitation of extension of the left knee. This was the date that the Veteran filed her most recent increased rating claim. For the Veteran to receive an earlier effective date for this increased rating, the evidence must demonstrate either (1) a formal claim was filed between August 2016 and February 16, 2017, or (2) a factually ascertainable increase in disability occurred during the period of February 17, 2016 and February 16, 2017.

As noted above, the most recent prior rating decision regarding the rating and effective date for limitation of extension of the left knee was dated in August 2015 and became final in August 2016. The Board has reviewed the claims file for any documents submitted between August 2016 and the formal increased rating claim received in February 2017. There are no outstanding claim forms relating to the left knee during this time period. In fact, the only claim form received from the time of the August 2015 rating decision to the February 2017 claim was a January 2016 claim for service connection for plantar fasciitis. This claim form did not address the left knee at all. As there were no claims filed for the left knee and not previously and finally adjudicated prior to February 2017, an earlier effective date cannot be assigned based on the receipt of an earlier claim. 

Additionally, the medical evidence is negative for any factually ascertainable increase in disability of the Veteran’s limitation of extension of the left knee prior to her currently assigned effective date and within the one-year period prior to her February 2017 formal claim. Notably, there were no VA or private treatment records relating the left knee for this period. The Veteran herself does not argue such, nor does she present any specific argument for her earlier effective date claim. There is simply no evidence showing a factually ascertainable increase in disability for limitation of extension of the left knee prior to the current effective date of February 17, 2017.

As there are no formal claims for an increased rating for the left knee received prior to February 17, 2017, and no competent evidence demonstrating that an increase in disability was factually ascertainable between February 17, 2016 and February 16, 2017, the effective date of the assignment of a 30 percent rating for limitation of extension of the left knee cannot be earlier than the date that the increased rating claim was received which is May 31, 2011. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

Accordingly, the Board finds that the claim of entitlement to an effective date prior to February 17, 2017, for the award of a 30 percent rating for limitation of extension of the left knee must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim of entitlement to an earlier effective date, that doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; see also Ortiz, supra.

REASONS FOR REMAND

1. Plantar fasciitis 

The Veteran claims that she has plantar fasciitis that began during her military service. As such, she believes service connection is warranted. Despite the diagnosis of plantar fasciitis during reserve service, the finding that it was in the line of duty, and the Veteran’s contentions that her plantar fasciitis has continued to the present, she has not been afforded a VA opinion. This claim must be remanded for a VA examination and opinion.

2. Left hip, right hip, low back disorders 

The Veteran claims that she has left hip, right hip, and low back disorders that were caused or aggravated by her service-connected orthopedic disabilities. As such, she believes secondary service connection is warranted. Despite her current complaints of pain, service-connected left knee and right ankle disabilities, and contentions that her left hip, right hip, and low back complaints started because of her service-connected orthopedic disabilities, she has not been afforded a VA opinion. These claims must be remanded for VA examinations and opinions.

3. Tinnitus

The Veteran claims that she has tinnitus that is a result of her military service. As such, she believes service connection is warranted. Despite the diagnosis of tinnitus, marksmanship awards for the M-16 rifle and hand grenade (suggesting loud noise exposure), and the Veteran’s contentions that her tinnitus is related to noise exposure in service, she has not been afforded a VA opinion. This claim must be remanded for a VA examination and opinion.

4. Left knee disability 

The Veteran was afforded a VA examination to address her left knee limitation of extension and flexion most recently in July 2017. The examiner noted that the Veteran experienced flare ups with intense pain and spasms, but did not describe her functional impairment, including limitation of motion, during a flare up. Significantly, the examiner did not address additional functional impairment with repeated use over time or during a flare up because the Veteran was not examined under these circumstances. It does not appear that he attempted to estimate additional functional impairment after repeated use over time or during flare ups based on the treatment records or by asking the Veteran specific questions. Moreover, he did not request that the Veteran return for a new VA examination when experiencing these conditions. In light of this deficiency, the Board finds that this claim must be remanded for a new VA examination and opinion.

5. Right ankle disability 

The Veteran was afforded a VA examination to address her right ankle disability most recently in July 2017. The examiner noted that the Veteran experienced flare ups with pain reaching a 7 out of 10 and she had increased difficulty standing or walking, but did not describe her functional impairment, including limitation of motion, during a flare up. Significantly, the examiner did not address additional functional impairment with repeated use over time or during a flare up because the Veteran was not examined under these circumstances. It does not appear that he attempted to estimate additional functional impairment after repeated use over time or during flare ups based on the treatment records or by asking the Veteran specific questions. Moreover, he did not request that the Veteran return for a new VA examination when experiencing these conditions. In light of this deficiency, the Board finds that this claim must be remanded for a new VA examination and opinion. 

6. TDIU and SMC 

As a decision on the remanded increased rating issues above could significantly impact a decision on the issues of entitlement to a TDIU and SMC, the issues are inextricably intertwined. Thus, a remand of these claims is also required.

The matters are REMANDED for the following actions:

1. Schedule the Veteran for examinations with appropriate examiners to determine the nature and etiology of her plantar fasciitis, bilateral hip, low back, and tinnitus disabilities.

(a.) Plantar Fasciitis 

The examiner must indicate whether the Veteran has a current diagnosis of a foot disorder, to include but not limited to, plantar fasciitis. All appropriate testing should be completed. 

If the examiner does not provide a diagnosis, s/he should indicate whether the Veteran experiences functional impairment due to her bilateral foot symptoms, including during flare ups or with repeated use over time. 

 

The examiner should then opine whether it is at least as likely as not that any diagnosed foot condition, including plantar fasciitis, is related to an in-service injury, event, or disease. The examiner should specifically consider the diagnosis of plantar fasciitis during reserve duty that is noted as in the line of duty.

(b.) Bilateral hips/ Low back

With regard to the bilateral hips and low back disorders, the examiner must indicate whether the Veteran has a current diagnosis for any of these complaints. 

If the examiner does not provide a diagnosis, s/he should indicate whether the Veteran experiences functional impairment due to her low back or left or right hip symptoms, including during flare ups or with repeated use over time. 

The examiner must then opine whether it is at least as likely as not that any identified low back, left hip, or right hip disorder was caused or aggravated by the Veteran’s service-connected orthopedic disabilities. The examiner should specifically address the contentions of altered gait. 

(c.) Tinnitus

With regard to tinnitus, the examiner must indicate whether the Veteran has a current diagnosis for any of these complaints. If so, s/he should then opine whether it is at least as likely as not that tinnitus is related to in-service noise exposure. The examiner should obtain a thorough history of the onset of tinnitus and address the awards indicating exposure to loud weapons. 

2. Schedule the Veteran for an examination by an appropriate clinician to determine the current severity of her service-connected left knee and right ankle disabilities. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria. The examiner must attempt to elicit information regarding the severity, frequency, and duration of any flare-ups, and the degree of functional loss during flare-ups.

To the extent possible, the examiner should identify any symptoms and functional impairments due to the service-connected disability alone and discuss the effect of that disability on any occupational functioning and activities of daily living. If it is not possible to provide a specific measurement, or an opinion regarding flare-ups, symptoms, or functional impairment without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

3. Then, schedule the Veteran for a VA examination with an appropriate medical professional to determine if it is at least as likely as not (a degree of probability of 50 percent or higher) that the Veteran is precluded from substantially gainful employment on account of his service-connected disabilities alone and in combination. In making this determination, the person should take into account the Veteran’s education and work history, but may NOT consider the Veteran’s age or any impairment caused by nonservice-connected disabilities.

 

 

T. Berry

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Moore, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.